OPINION OF THE COURT
Hancock, Jr., J.
Defendant was arrested for selling $10 worth of crack/cocaine to an undercover officer. Following a jury trial, he was convicted of criminal sale of a controlled substance in the third degree and other drug-related crimes.[1] In his appeal to *535 the Appellate Division, defendant argued that the trial court had improperly denied his request for a missing witness charge because of the People’s unexplained failure to call a second undercover officer who allegedly had observed the sale. The Appellate Division rejected defendant’s argument and unanimously affirmed. It cited — but did not distinguish — our recent decision in People v Erts (73 NY2d 872). The defendant has appealed by leave. We now reverse the convictions for sale and possession in the third degree.
I
The alleged "buy” for which defendant was tried and convicted took place shortly after 6:00 p.m. on November 11, 1987 near the corner of 171st Street and Liberty Avenue in Queens. It was dark, very cold and snowy. Undercover Officer 8615, accompanied by another undercover officer, parked on the north side of Liberty Avenue facing west between 171st and 172nd. Across Liberty Avenue near the corner, Officer 8615 observed a man wearing a blue snorkel jacket. He approached him and asked if he had any "nicks” ($5 quantities of crack/ cocaine). The man responded that he only had "dimes” ($10 quantities). Officer 8615 said, "OK, give me one” and the man handed him a clear, plastic vial with a yellow top. He gave the man a prerecorded $10 bill and returned to his car. The "buy” transaction, he testified, lasted 10 to 15 seconds.
Officer 8615 contacted the back-up team and gave them a description of the man who, he said, had gone into the "bodega” on the corner. The back-up team entered the "bodega” and arrested a person who fit the description. At trial, Officer 8615 identified defendant — the man whom the police had arrested — as the person who sold him the drugs.
The police searched defendant immediately following the arrest, but did not find the prerecorded "buy” money. The search did uncover, however, four plastic "baggies” of crack and one of marihuana. According to expert testimony, in the failure of the police to find the "buy” money on defendant and in their discovery of a supply of other drugs, defendant’s arrest differed from the typical drug "buy” arrest. Officer Fenrich of the Queens Narcotics Division testified that in 80 to 90% of drug "buy” cases the prerecorded money is recov *536 ered. Also, according to Fenrich, the seller seldom carries a supply of drugs with him. Thus, in 75% of the cases — as contrasted with defendant’s arrest — the postarrest search turns up no drugs or drug paraphernalia.
On cross-examination, Officer 8615 testified that his partner, another undercover officer, was "in the car watching [him] to make sure that [he was] all right”. Officer 8615 stated that he and the seller were both standing sideways to the vehicle which was parked on the other side of the street. He did not "know if [his partner] could see the hand-to-hand action from where he was sitting”. The People never called the partner to testify.
Before the final summations, defense counsel requested a missing witness charge based on the facts developed in his cross-examination of Officer 8615. The court summarily denied the request, apparently concluding that defendant had not made the requisite prima facie showing of entitlement to the charge under People v Gonzalez (68 NY2d 424, 427-428).
On defendant’s appeal of the convictions to the Appellate Division, that court affirmed in a brief memorandum stating that there was no basis for a reversal "on the ground that the trial court denied [defendant’s] request for a missing witness charge” (165 AD2d 836).
II
In People v Gonzalez (68 NY2d 424, supra), we explained that the instruction "commonly referred to as a 'missing witness charge’, derives from the commonsense notion that 'the nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party’s cause’ (2 Wigmore, Evidence § 285, at 192 [Chadbourn rev ed 1979] quoted in Laffin v Ryan, 4 AD2d 21, 25). Of course, the mere failure to produce a witness at trial, standing alone, is insufficient to justify the charge. Rather, it must be shown that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party” (id., at 427).
Once the party seeking the charge has met the initial burden of showing that the uncalled witness could be expected *537 to have knowledge about a material issue and to testify favorably to the opposing party "it becomes incumbent upon the opposing party, in order to defeat the request to charge, to account for the witness’ absence or otherwise demonstrate that the charge would not be appropriate. This burden can be met by demonstrating that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative to other evidence, that the witness is not 'available’, or that the witness is not under the party’s 'control’ such that he would not be expected to testify in his or her favor” (id., at 428).
In the case before us, no question is raised concerning the "control” or "availability” requirements for the missing witness charge. Indeed, if there had been any doubt on either of these points, the record could not reflect it because the court denied the request without requiring the prosecutor "to account for the witness’ absence or otherwise demonstrate that the charge would not be appropriate” (id., at 428). The People’s sole contention is that defendant failed to sustain his initial burden under Gonzalez of showing that the witness was knowledgeable about a material issue in the case. The initial showing was insufficient, the People argue, because defendant’s "application merely drew bold-faced conclusions and did not supply any details to back them up, nor did counsel even specify upon which issue the witness was allegedly knowledgeable”.
The People’s argument, if adopted, would place on the party requesting the charge a far more onerous burden of making a prima facie showing of the witness’ possession of material knowledge than called for in Gonzalez. A party requesting a missing witness charge with respect to a witness under the control of (and presumably favorable to) the opposite party can hardly know what that witness knows or what the witness would say if called. Because the witness is not called, this necessarily remains a matter of speculation. As a rule, all that the requesting party can do is to show from the witness’ relationship to the issues or events in dispute that the witness was in a position to have knowledge of these issues or to have observed the events. Once this demonstration has been made —in the absence of a showing of why the witness was not called or that the charge, for some reason, would not be proper — the inference may be fairly drawn that the testimony *538 of the missing witness, if called, would have been unfavorable (see, People v Gonzalez, supra, at 427-428).
Here, the factual issue was whether the prosecution could meet its burden of proving that defendant was the person who sold the drugs. The uncalled officer, if he had observed the transaction, would presumably have been a witness for the prosecution on this material issue. Surely, no more specificity was needed on a point which was obvious: that the uncalled witness might have offered material testimony on the critical issue of identity. Nor could defense counsel have reasonably been expected to supply more details on the witness’ presumed knowledge of the events in dispute. Defense counsel’s only means of showing that the uncalled witness was in a position to see what was taking place across the street was the cross-examination of undercover Officer 8615. We conclude that the facts elicited concerning the witness’ location in a car across the street where he was watching out for his partner’s safety were sufficient for defendant’s prima facie showing (see, People v Erts, 73 NY2d 872, supra).
The People argue, nevertheless, that the "facts of this case belie the defendant’s argument that the uncalled officer was in a position to witness the transaction. The officer, if he viewed the transaction at all, viewed it from across Liberty Avenue on a dark, snowy evening * * * [T]he best possible view * * * [he] could have had of him was a profile view of a man wearing a hood”. In short, the People contend that the uncalled witness could see nothing. We reject this argument. What the witness actually saw or could have seen are the precise questions which he could have answered if he had been called to testify and which the prosecution chose to leave unanswered by not calling the witness. To require the party requesting a missing witness charge to furnish details which could only be obtained from the very witness the opposing party has failed to produce — as the People suggest we should —would vitiate the rule that we established in Gonzalez.
Moreover, to impose such a requirement here would be directly contrary to our recent holding in another drug sale case (People v Erts, supra) where, in similar circumstances, we held that a missing witness charge should have been given when the People chose not to call the second undercover officer. People v Dianda (70 NY2d 894), cited by the People, is distinguishable. In Dianda, there was no evidence that the *539 uncalled witness was in the presence of the participants at the time of the critical conversations so that he would have been knowledgeable about what was said.
Ill
We are not persuaded, given the circumstances of this case, that the court’s denial of the requested charge for defendant’s failure to make the Gonzalez prima facie showing was harmless error (see, People v Crimmins, 36 NY2d 230, 238-240). We find no merit in the contention that the trial court erred in its refusal to permit the defendant to waive a jury pursuant to CPL 320.10 inasmuch as the jury had been impaneled and sworn. Nor do we find merit in defendant’s other argument.
Accordingly, the order should be modified by reversing the convictions and ordering a new trial with respect to counts 1 and 2 for criminal sale and criminal possession of a controlled substance in the third degree and, as so modified, affirmed.[2]
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed.

. In addition to the conviction for the sale, defendant was convicted of *535 criminal possession of a controlled substance in the third degree and unlawful possession of marihuana for substances found on his person at the time of arrest.

. [3] The court instructed the jury on count 2 that one of the elements of criminal possession of a controlled substance in the third degree is that defendant possessed the four baggies of cocaine with the intent to sell them. The People argued to the jury that the intent to sell in count 2 could be inferred from their finding defendant guilty of count 1, the criminal sale of the vial of cocaine. Because count 2 is factually related to count 1, reversal of count 1, due to the erroneous omission of the missing witness charge, also requires a new trial on count 2 (see, People v Kelly, 76 NY2d 1013, 1015; People v Cohen, 50 NY2d 908, 911). Defendant concedes that the omission of the missing witness charge was unrelated to defendant’s conviction for unlawful possession of marihuana, and requests, based on this error, a new trial limited to counts 1 and 2 of the indictment.