■ In the Matter of JASON J., a Person Alleged to be a Juvenile Delinquent, Appellant.—In a juvenile delinquency proceeding pursuant to Family Court Act article 3, the appeal is from an order of disposition of the Family Court, Kings County (Hepner, J.), dated April 30, 1991, which, upon a fact-finding order of the same court, dated April 11, 1991, made after a hearing, finding that the appellant had committed acts which, if committed by an adult, would have constituted the crimes of assault in the second degree, criminal possession of a weapon in the fourth degree, assault in the third degree, and menacing, and was guilty of unlawful possession of a weapon by a person under 16, adjudged him to be a juvenile delinquent, and placed him with the Division for Youth for a period not to exceed 18 months. The appeal brings up for review the fact-finding order dated April 11, 1991.

Ordered that the order of disposition is affirmed, without costs or disbursements.

Contrary to the appellant's contention, the juvenile delinquency petition, along with its supporting deposition, was legally sufficient (see, Family Ct Act § 311.2). While it is true that the petition incorrectly alleged that the appellant had committed assault in the second degree by means of a "deadly weapon, to wit a boxcutter razor", a juvenile delinquency petition need not set forth facts which are evidentiary in nature (see, Family Ct Act § 311.1 [3] [h]). Moreover, the petition substantially conformed to the requirements pre-

scribed in Family Court Act § 311.1, despite the agency's failure to designate the assault as having been committed by means of a "dangerous instrument" (Family Ct Act § 311.2 ▮). In any event, the complainant's supporting deposition, which contained nonhearsay allegations, clarifies that the "boxcutter razor" was not used in the assault, but related, instead, to the weapon possession charges.

Furthermore, the nonhearsay allegations in the supporting deposition established the "dangerous instrument" element of the crime of assault in the second degree (Family Ct Act § 311.2 [3]; Penal Law § 120.05 [2]; *Matter of Jahron S.,* 79 NY2d 632; *Matter of Detrece H.,* 78 NY2d 107; *Matter of David T.,* 75 NY2d 927, 929; *Matter of Verna C.,* 143 AD2d 94). The term "dangerous instrument" is defined in Penal Law § 10.00 (13) as "any instrument, article or substance * * * which, under the circumstances in which it is used * * * is readily capable of causing death or other serious physical injury". The complainant averred in his supporting deposition that he was thrown to the ground and kicked by the appellant, as well as five other attackers. While he did not specify that the appellant wore footwear at the time of the assault, it was a logical assumption given the date of the incident— January 24, 1991. We find that the shoe, sneaker, or boot with which the appellant kicked the complainant, under the circumstances of this case, constituted a "dangerous instrument" within the meaning of Penal Law § 10.00 (13) and, thus, satisfied the requirements of Family Court Act § 311.2 (3) *(see, People v Carter,* 53 NY2d 113; *People v O'Hara,* 124 AD2d 895; *People v Bidwell,* 153 AD2d 960).

Viewing the evidence in the light most favorable to the presentment agency *(see, People v Contes,* 60 NY2d 620; *Matter of Jamal C.,* 186 AD2d 562), we find that it was legally sufficient to establish, beyond a reasonable doubt, the "physical injury" element of the crimes of assault in the second degree and assault in the third degree *(see,* Penal Law § 120.05 ▮ § 120.00 [1]; § 10.00 [9]). The complainant's testimony established that he was punched in his head and chest, and was thrown to the ground where six assailants, including the appellant, kicked him. As a result of the assault, he sustained "chest pain for at least three days", and a "big bump" on his forehead which later developed into a bruise. He requested medical attention after the assault, and subsequently treated his injuries by taking aspirin, rubbing a topical medication on his chest, and putting an icepack on his head. He also felt "dizzy and weak" for about a day. This evidence was sufficient

to support the fact-finder's determination that the complainant had sustained "physical injury" within the meaning of Penal Law § 10.00 (9) *(see, Matter of Philip A.,* 49 NY2d 198, 200; *see also, People v Greene,* 70 NY2d 860; *People v Miller,* 146 AD2d 809; *People v Scott,* 162 AD2d 479; *People v Soto,* 184 AD2d 673).

The hearing court properly denied the appellant's request for a missing witness charge, since he failed to demonstrate that the uncalled witness—the complainant's father—was knowledgeable about a material issue in the case, and that the uncalled witness would naturally be expected to provide testimony favorable to the prosecution *(see, People v Kitching,* 78 NY2d 532, 537; *People v Gonzalez,* 68 NY2d 424, 427; *People v Farrow,* 187 AD2d 667 [decided herewith]).

The appellant's remaining contention is unpreserved for appellate review *(see,* CPL 470.05 [2]). Thompson, J. P., Eiber, Copertino and Pizzuto, JJ., concur.