◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL MELENDEZ, Appellant. [643 NYS2d 607] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Rappaport, J.), rendered May 14, 1994, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to the police.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the indictment is dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury (*see, People v Beslanovics,* 57 NY2d 726); and it is further,

Ordered that upon service upon him of a copy of this decision and order, with notice of entry, the official having custody of the defendant's person is directed to produce him, forthwith, before the Supreme Court, Kings County, at which time that court shall issue a securing order pursuant to CPL 470.45, either releasing the defendant on his own recognizance or fixing bail or committing him to the custody of the New York City Department of Correctional Services pending resubmission of the case to the Grand Jury and the Grand Jury's disposition thereof (*cf.,* CPL 210.45 [9]). Such securing order shall remain in effect until the first to occur of any of the following: (a) a statement to the court by the People that they do not intend to resubmit the case to the Grand Jury, (b) arraignment of the defendant upon an indictment filed as a result of resubmission of the case to a Grand Jury, (c) the filing with the court of a Grand Jury dismissal of the case following resubmission thereof, or (d) the expiration of a period of 45 days from the date of this decision and order, provided that such period may, for good cause shown, be extended by the Supreme Court, Kings County, to a designated subsequent date if such be necessary to accord the People a reasonable opportunity to resubmit the case to a Grand Jury.

The record establishes that the defendant voluntarily accompanied the police to the precinct and voluntarily remained there until his arrest. Since "[c]onsent is a valid substitute for

probable cause" (*People v Hodge,* 44 NY2d 553, 559), the defendant's inculpatory statements were properly received at trial (*People v Vogler,* 201 AD2d 890; *People v Langdon,* 188 AD2d 1036; *People v Denis,* 181 AD2d 1017, 1018).

Nevertheless, we do agree that the defendant was denied a fair trial as a result of the manner in which the court presided over his trial. The proper role of a Trial Justice is "neither that of automaton nor advocate" (*People v Yut Wai Tom,* 53 NY2d 44, 56). A Justice is generally not precluded from taking an active role in the truth-seeking process (*People v Jamison,* 47 NY2d 882, 883) and indeed, may take the initiative to clarify confusing testimony and facilitate the orderly and expeditious progress of the trial (*see, People v Watts,* 159 AD2d 740; *People v Cooper,* 96 AD2d 866). However, this power is one that should be exercised sparingly (*People v Yut Wai Tom,* 53 NY2d, *supra,* at 57), and must be properly circumscribed so as not to result in the court taking an adversarial position (*People v Cooper, supra; People v Tucker,* 89 AD2d 153). While the court may pose appropriate questions (*People v Moulton,* 43 NY2d 944, 945), it has been recognized that a Justice's examination of witnesses "carries with it so many risks of unfairness that it should be a rare instance when the court rather than counsel examines a witness" (*People v Yut Wai Tom, supra,* at 57). Most importantly, when choosing to pose questions, a Justice must not do so "in a manner from which a jury will gain the impression of [the] existence of an opinion on the part of the court as to the credibility of the testimony of any witness or the merits of any issue in the case" (*People v Moulton,* 43 NY2d, *supra,* at 945).

In the case at bar, the Trial Justice repeatedly interrupted the prosecutor and made numerous unwarranted inquiries of witnesses. Indeed, the record demonstrates that when the court was dissatisfied with the course of examination of a witness, the court essentially assumed the role of prosecutor and asked the questions which it believed needed to be asked. The court likewise assumed control of defense counsel's cross-examination of prosecution witnesses. Moreover, the court exacerbated the prejudice to the defendant by asking pointed questions which clearly evinced the court's assessment of the witnesses' credibility. The court's questioning impeded the defense from establishing the existence of a reasonable doubt with regard to the inaccessibility of a fire escape. In addition, the court presumptuously provided a witness with a read-back of testimony before the court reporter could respond to the request, and it turned out that the court's recollection of the

testimony was erroneous. From the foregoing, and from the numerous other instances recounted in the record, we find that the trial court overstepped its bounds, thereby denying the defendant a fair trial.

Finally, one other point warrants discussion so as to avoid a repetition of a questionable practice. During the testimony of a prosecution witness who was aided by an interpreter, the prosecutor sought to refresh the witness's recollection with a police report which was written in English. Because the witness could not read English, and to prevent Spanish-speaking jurors from overhearing the translation process, the court directed the witness and the interpreter to step outside into the hallway where the interpreter was to read the report to the witness. Defense counsel sat idly by rather than raise a simple, contemporaneous objection which could have easily prevented the error now claimed to have occurred.

The defendant thus now also contends that his conviction must be reversed because he was absent from a material stage of the trial. Clearly it would have been the better practice for the court to excuse the jury so that the interpreter could have refreshed the witness's recollection on the record. Nevertheless, in the absence of controlling authority directly to the contrary, and absent even an allegation that anything improper occurred during the brief discussion in the hallway or that the defendant's ability to defend was in any way compromised thereby, we are not persuaded that the defendant was absent from a genuinely material stage of the trial (*see, Snyder v Massachusetts,* 291 US 97; *People v Martinez,* 224 AD2d 326; *People v Richard,* 222 AD2d 708; *People v Harris,* 222 AD2d 522; *People v Jayson,* 215 AD2d 794; *People v Stanley,* 212 AD2d 983; *People v Colon,* 211 AD2d 575; *People v Cole,* 201 AD2d 577; *People v Harrison,* 181 AD2d 743, 744; *cf., People v Spotford,* 85 NY2d 593; *People v Dokes,* 79 NY2d 656; *People v Sloan,* 79 NY2d 386; *People v Ortega,* 78 NY2d 1101; *People v Velasco,* 77 NY2d 469).

We have reviewed the defendant's remaining contentions and find them to be without merit. Rosenblatt, J. P., Miller, O'Brien and McGinity, JJ., concur.