■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL J. DURHAM, Appellant. [670 NYS2d 235].—Cardona, P. J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered October 9, 1996, upon a verdict convicting defendant of the crime of burglary in the third degree.

Following a jury trial, defendant was convicted of the crime of burglary in the third degree stemming from allegations that he, acting in concert with codefendant Sterling Butler, unlawfully entered an unoccupied farm house owned by Andrew Chapman, located in the Town of Rossie, St. Lawrence County, and stole an antique bed. Defendant was sentenced to a definite sentence of one year in jail.

Defendant argues that the verdict was not supported by legally sufficient evidence. The record indicates that on an evening in January 1995, defendant, Butler, Matt Martin and Brad Tyler, after drinking alcohol at Peggy Durham's house, left with Rachel (Borrun) McIntosh at about 10:30 P.M. and went to a store to purchase gasoline. Thereafter, they drove to Rossie at Martin's direction. McIntosh testified that she only intended to go to the store to obtain gas and beer and then return to Durham's house. During the drive, Martin and Butler started talking about stealing an antique bed and phonograph from a deserted house. When McIntosh heard this discussion, she testified that she did not believe that Martin and Butler

were serious. There was also testimony indicating that Martin and Butler talked defendant into going into the house. McIntosh drove the vehicle past the house, stopped to let defendant and Butler out and parked the car several hundred feet away. The people in the car heard a loud bang and 10 to 15 minutes later defendant and Butler returned.

Defendant carried a large wooden headboard with designs on it and Butler carried a footboard and a frame. McIntosh indicated that they were shocked when defendant and Butler returned with the bed. However, with Martin's help, defendant and Butler put the headboard and footboard into the trunk. They put the frame inside the car with the ends hanging out the front passenger window and drove back to McIntosh's trailer arriving after midnight. During the trip back, Martin and Butler discussed selling the bed to an antique dealer and offered to share the money with defendant. Back at the trailer, they unloaded the bed and put it inside where it remained until the following day when Butler and Martin apparently retrieved it. Later, they told McIntosh the bed was too hot to sell and, therefore, destroyed it.

Tyler testified that he consumed 12 cans of beer at Durham's house. The evidence reveals that he did not participate in the discussion about stealing and did not leave the car at Chapman's house. Chapman testified that he closed up his house in November 1994 before leaving to spend the winter in Florida. When he left, his antique, ornately carved, dark full-size oak bed was in the master bedroom. When he returned in July 1995, he found his back door smashed and the bed missing. He reported the theft to the police. Chapman further testified that he never gave permission to defendant or Butler to enter his house or remove anything from it.

Defendant contends that the prosecution was required to prove to a moral certainty that defendant entered the Chapman house. However, that legal standard does not apply in a case where, as here, there is both direct and circumstantial evidence of guilt (see, People v Ruiz, 52 NY2d 929, 930; People v Barnes, 50 NY2d 375, 380; People v Gerard, 50 NY2d 392, 397-398). Although there was no direct evidence of defendant's entry, there was direct evidence that he was aware of Butler's plan to burglarize the house, left the car to accompany Butler and returned with stolen property in his possession. Given Chapman's testimony and the loud bang heard by McIntosh and Tyler, the jury was clearly permitted to infer either that defendant unlawfully entered the house with the intent to steal property or that he intentionally aided Butler to commit

the crime of burglary (*see*, Penal Law §§ 140.20, 20.00; *cf.*, *People v Burke*, 126 AD2d 938), which was consistent with the People's theory that he acted in concert with Butler (*cf.*, *People v Ortiz*, 207 AD2d 279, *lv denied* 84 NY2d 909).

Therefore, viewing the evidence at trial in a light most favorable to the People (*see*, *People v Thompson*, 72 NY2d 410, 413; *People v Allah*, 71 NY2d 830; *People v Bleakley*, 69 NY2d 490, 495), we find a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the fact finder. Accordingly, we conclude that the evidence was legally sufficient to establish defendant's guilt beyond a reasonable doubt (*see*, *People v Cabey*, 85 NY2d 417, 420-421; *People v Williams*, 84 NY2d 925, 926; *People v David*, 234 AD2d 787, 790, *lv denied* 89 NY2d 1034). Furthermore, upon the exercise of our factual review power, we do not agree with defendant and are satisfied that the verdict is not against the weight of the evidence (*see*, *People v Bleakley*, *supra*; *People v Dygert*, 229 AD2d 735, 737, *lv denied* 89 NY2d 921).

We next address defendant's contention that County Court should have severed his case from that of Bulter. We note defendant's failure to preserve this issue for review (*see*, CPL 470.05) through an application for a separate trial (*see*, CPL 200.40). Were we to exercise our discretionary power to review in the interest of justice (*see*, CPL 470.15 [6] [a]), we would conclude that defendant was not entitled to a severance because there was no showing that the joint trial resulted in "undu[e] prejudice[ ]" (CPL 200.40), such that his defense was substantially impaired (*see*, *People v Mahboubian*, 74 NY2d 174, 184).

Defendant also contends that County Court erred in refusing to charge the jury that McIntosh and Tyler were accomplices as a matter of law (*see*, CPL 60.22 [2]). As the record shows that " 'different inferences [could] reasonably [have been] drawn from the proof regarding complicity * * * the question [was properly] left to the jury for its determination' " (*People v O'Malley*, 236 AD2d 736, 737, *lv denied* 90 NY2d 908, quoting *People v Basch*, 36 NY2d 154, 157; *accord*, *People v Sweet*, 78 NY2d 263, 266).

We now turn to defendant's claim that he was denied effective assistance of counsel. The argument is premised on the fact that his attorney did not make a severance motion, nor did he request various charges including circumstantial evidence, accomplice as a matter of law and missing witness. As we have noted, the first three claims are not supported by the record. Similarly unavailing is defendant's claim that counsel should

have requested a missing witness charge with respect to Martin. Absent proof "that such witness would have provided noncumulative testimony which was favorable to him", there was no basis for such a charge (*People v Miller*, 235 AD2d 568, 570-571; *see*, *People v Kitching*, 78 NY2d 532, 536). We further note that counsel engaged in vigorous cross-examination and made other appropriate motions and objections. Viewing the evidence, the law and the circumstances of this case in totality, and as of the time of representation, we are satisfied that defendant's attorney provided meaningful representation (*see*, *People v Baldi*, 54 NY2d 137, 147; *People v McLean*, 243 AD2d 756, 758).

Finally, we note that defendant has already served his one-year sentence, rendering his harsh and excessive argument moot.

Mercure, White, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed.