[752 NYS2d 679]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIVE BADINE, Appellant.

Second Department, December 2, 2002

## APPEARANCES OF COUNSEL

*Lynn W. L. Fahey*, New York City (*V. Marika Meis* and *Yvonne Shivers* of counsel), for appellant, and *Clive Badine*, appellant pro se.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove, Rhea A. Grob* and *Thomas Ross* of counsel), for respondent.

## OPINION OF THE COURT

GOLDSTEIN, J.

The defendant stands convicted of sodomizing his daughter, born in 1992, during the years 1996, 1997, and 1998 when she was living with her mother and visiting him on weekends. In February 1999, the defendant discovered that the mother had left her children home alone and reported the mother to the police. The defendant gained custody of the complainant in March 1999. It is undisputed that the defendant did not abuse the complainant while she was in his legal custody when he had greater access to her person.

The complainant's allegations first came to light in January 2000 when she was questioned by school officials after giving a sexually suggestive drawing to a boy in her class. At that time, she also charged that her cousin's older brother raped her on two occasions in December 1999. On January 14, 2000, the complainant was examined at New York Methodist Hospital. The hospital records indicate that her hymen remained intact and there were no lesions or bruises. The charges against her cousin's older brother were dismissed on the ground that there was no evidence of force, although owing to the complainant's age no proof of force was required (*see* Penal Law § 130.35 [3]).

The defendant was indicted for 208 counts of sodomy in the first degree, 208 counts of sexual abuse in the first degree, and related offenses. After a jury trial, he was convicted of 12 counts of sodomy in the first degree.

The sole evidence against the defendant was the testimony of the complainant, who was eight years old when she testified at the trial, and evidence of the complainant's prompt outcry to her mother, who did not testify at the trial. The People conceded at oral argument of the instant appeal that if the complainant's mother had testified at the trial, her testimony would have "completely undermined the People's case."

The complainant was portrayed as a bright child who excelled in school while in her father's custody. She was placed in a class for excellent students for the 1999-2000 school year. After she was removed from her father's custody, she had to attend summer school, and was not placed in a class for excellent students for the 2000-2001 school year. To explain the deterioration in her school performance, the People elicited expert testimony that a child suffering abuse could "compartmentalize during the abuse period" and "fall apart" once the abuse was disclosed. However, in the complainant's case, it is undisputed that any abuse attributed to the defendant ended well before she was placed in a class for excellent students.

Although the evidence before the jury was plagued by logical inconsistencies, it was nevertheless legally sufficient (*see People v Contes*, 60 NY2d 620) and it cannot be said that the verdict was against the weight of the evidence (*see* CPL 470.15 [5]). There are facts in the record excluded from the jury's consideration which in this Court's judgment should have been presented to the jury.

■ During the trial, the trial court refused to permit the defense counsel to cross-examine the complainant with respect to her charges of rape against her cousin's brother. Although this contention is not raised in the defendant's appellate brief, it was properly preserved by the defense counsel at the trial. The trial court's ruling was prejudicial error. Both this Court and the Court of Appeals have jurisdiction to consider any question of law "involving error or defect in the criminal court proceedings which may have adversely affected the appellant" (CPL 470.15 [1]; *see* CPL 470.35 [1]), regardless of whether the question is raised on appeal to the Appellate Division (*see People v Stubbs,* 30 AD2d 932, *cert denied* 393 US 1108; *Matter of Stagnar v Stagnar,* 98 AD2d 983; *see also People v Jones,* 95 NY2d 721).

The charges of rape against the complainant's cousin's brother were dismissed based upon insufficient evidence of force although no proof of force was necessary. Further, those charges were essentially rebutted by the hospital records indicating the complainant's hymen was intact and no bruises or lesions were present. It appears that the complainant's allegations of rape may have been false and therefore admissible to impeach her credibility (*see People v Harris,* 151 AD2d 981; *People v Harris,* 132 AD2d 940; *Matter of Lees,* 187 Misc 2d 901; *see also People v Mandel,* 48 NY2d 952, *cert denied* 446 US 949).

■ Further error was committed when the trial court refused the defendant's request for a missing witness instruction with respect to the People's failure to call the complainant's mother as a witness. Such an instruction would have permitted the jury to infer that which the People concede was in fact the case: that if the complainant's mother had been called as a witness, her testimony would have been unfavorable to the People.

The defendant was obliged to request a missing witness charge as soon as "practicable" (*People v Gonzalez*, 68 NY2d 424, 428). As soon as practicable means as soon as the party requesting the charge learns that the uncalled witness is knowledgeable about a material issue in the case, and can be expected to testify favorably to the opposing party. Such information may not be apparent until there has been testimony from witnesses at the trial (*see People v Gonzalez, supra* at 426-427).

In the instant case, the defense counsel's request for a missing witness charge was based upon testimony adduced by the People at the trial which demonstrated that the complainant's mother had knowledge of material facts in the case. The prosecutor elicited evidence of prompt outcry by the complainant to her mother upon direct examination of the complainant. On cross-examination of the defendant's niece, the prosecutor asked if the complainant and the defendant "had a fight about the defendant" giving the complainant a bath. On cross-examination of the defendant, who testified in his own behalf, the prosecutor asked if the complainant's mother had confronted him about washing the complainant's vagina. The prosecutor also elicited testimony from the defendant that the complainant's mother had told him she would not be happy until he was in jail.

The defense counsel's request for a missing witness instruction was made after both parties had formally rested. Therefore, the request was technically untimely (*see People v Randall*, 177 AD2d 661). However, since the mother's testimony was crucial to the People's case, this Court should exercise its interest of justice jurisdiction to review the issue (*see* CPL 470.15 [6] [a]). If the instruction had been granted, the People would not have suffered any unfair surprise. The People knew at the commencement of the trial that the complainant's mother's testimony would be unfavorable to their case. Their apparent trial strategy was to present a favorable version of what she allegedly knew through the testimony of other witnesses. Under the circumstances, the People knew or should have

known during the trial that the complainant's mother satisfied the definition of a missing witness.

At the trial, the prosecutor argued that a missing witness instruction was not appropriate on the grounds that the complainant's mother "is not going to testify favorably for the People" and was the subject of a neglect petition in Family Court. The court denied the request for a missing witness charge on the grounds that the request was untimely, there was "no indication that the complainant's mother has evidence on a material issue, has evidence of recent outcry," and there was "no indication that the witness is in the control of the People or would be expected to testify favorably to the People."

In *People v Macana* (84 NY2d 173, 177), the Court of Appeals held that the party seeking the missing witness charge must sustain an initial burden of showing that the witness could be expected to have knowledge regarding a material issue in the case and to provide testimony favorable to the opposing party. The complainant's mother was the only person who could have verified the complainant's claims of prompt outcry based upon her personal knowledge. The trial court's conclusion that "there is no indication that the complainant's mother has evidence on a material issue" is totally unsupported by the record.

Further, the defense counsel established that the complainant's mother would be expected to give testimony favorable to the People. The fact that she was the complainant's mother was sufficient to establish that she "would naturally be expected to testify in support of the People's position" (*People v Gonzalez, supra* at 431). Moreover, on cross-examination of the defendant, the prosecutor elicited evidence that the complainant's mother had told him she would not be happy until he was in jail, confirming that she was disposed to give testimony favorable to the People. As the Court of Appeals noted in *People v Kitching* (78 NY2d 532, 537-538), once the defendant established that "the witness was in a position to have knowledge of these issues or to have observed the events" attested to by the People's other witnesses, "the inference may be fairly drawn that the testimony of the missing witness, if called, would have been unfavorable," unless the People establish that a missing witness charge would not be appropriate.

The prosecutor argued that a missing witness instruction was not appropriate in this case on the ground that the witness was not under the People's control, since she was the subject of a neglect proceeding in Family Court. However, the

neglect petition was not produced and there is no evidence in the record as to the status of the neglect proceeding at the time of the trial. It is undisputed that the complainant's mother lost custody of her children based on prior allegations of neglect well before the complainant's allegations of abuse came to light. Accordingly, the prosecutor failed to meet the burden of establishing that the witness was not under the People's control (cf. *People v Geer*, 213 AD2d 764). Nor can it be said that the witness was unavailable, which is defined as "the witness' whereabouts are unknown" and "diligent efforts" to locate her have been unsuccessful (*People v Gonzalez, supra* at 428).

At oral argument of the instant appeal, the People argued that a missing witness charge was inappropriate on the ground that the complainant's mother, if called as a witness, would have denied that the defendant had access to her daughter during much of the period relevant to the charges. The People described the complainant's mother as an alibi witness for the defendant. This argument is consistent with their candid acknowledgment at trial that the complainant's mother would have provided testimony unfavorable to the People. In this case the inference that the complainant's mother, if called as a witness, would have given testimony unfavorable to the People, is not merely an inference: it is a fact. This fact merely underscores the necessity for the instruction.

The theory underlying the missing witness instruction is that an "honest" party, confident in the validity of his or her position, would call those witnesses under his or her control with knowledge of material issues since such witnesses would give favorable testimony (*People v Kitching, supra* at 536). If a party fails to call such a witness based upon knowledge that the witness will give unfavorable testimony, such casts doubt on the honesty and validity of the party's position. In the instant case, the fact that the complainant's mother would have contradicted the People's evidence was crucial to the jury's weighing of the evidence against the defendant (*see Laffin v Ryan*, 4 AD2d 21, 27).

We find the conclusion inescapable that the verdict of guilt in this case may not be the result of honest fact-finding, but rather the errors of the defendant's counsel and the trial court. It is the duty of this Court to take corrective action under such circumstances (*see* CPL 470.20). Accordingly, the judgment appealed from is reversed and a new trial is ordered.

ALTMAN, J.P., H. MILLER and RIVERA, JJ., concur.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.