■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS MONTOYA, Appellant. [882 NYS2d 429]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Heffernan, J.), rendered March 22, 2007, convicting him of attempted rape in the second degree, criminal sexual act in the second degree, sexual abuse in the second

degree (three counts), and endangering the welfare of a child, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Kings County, for a new trial.

In 2006, the defendant, a neighborhood handyman, was arrested and charged with engaging in acts of sexual misconduct with a 13-year-old girl, who lived in one of the apartments where he worked. In a pretrial omnibus motion, the defendant moved, inter alia, for a hearing pursuant to *People v Sandoval* (34 NY2d 371, 374 [1974]; *see* CPL 240.43), which the People consented to, stating that they would provide the defendant with notice of any prior uncharged criminal, vicious, or immoral acts which they intended to use at trial to impeach him. While the motion court granted the request for a *Sandoval* hearing and referred same to the trial court, the trial court deemed the matter "resolved," and no hearing was held.

During the jury trial, the defendant elected to testify to his version of the events, explaining that he worked shirtless in the complainant's apartment, while sanding and painting the apartment's bathroom at the complainant's mother's request, and that he did not commit any misconduct with her 13-year-old daughter. In cross-examining the defendant, the People asked him whether he had been born in Colombia, and whether he was a United States citizen. Defense counsel objected, but the objection was overruled, and the defendant acknowledged his lack of United States citizenship. The People then asked the defendant whether he was paid in cash for his employment, and defense counsel also objected to that question. At a sidebar, defense counsel explained that the prosecutor was improperly attempting to elicit testimony that the defendant evaded his taxes, a prior bad act that required notice pursuant to *Sandoval*. The People countered that the defendant had no convictions, and that the tax question was a credibility issue once he took the stand. The court overruled the objection, forcing the defendant to testify as to his failure to pay taxes.

At the conclusion of the jury trial, the defendant was convicted of attempted rape in the second degree, criminal sexual act in the second degree, sexual abuse in the second degree (three counts), and endangering the welfare of a child. This appeal by the defendant ensued, in which he argues, inter alia, that the trial court "mishandled" the prejudicial testimony of one of his character witnesses, that the prosecutor improperly impeached him by eliciting testimony that he was not a United States citizen, and that he had failed to pay income taxes, that

the evidence was insufficient to support one of the counts of sexual abuse in the second degree, and that the verdict was against the weight of the evidence. In opposition, the People contend, in essence, that the trial court's errors, if any, were harmless. On this record, we find that the defendant was denied a fair trial by the combination of the trial court's errors in limiting the defendant's cross-examination of key prosecution witnesses as well as character witnesses, and in permitting the defendant to be improperly impeached in violation of *People v Sandoval* (34 NY2d at 374). Accordingly, we reverse the judgment and order a new trial.

Essentially codifying *People v Sandoval*, Criminal Procedure Law § 240.43 provides, in relevant part, that: "[u]pon a request by a defendant, the prosecutor shall notify the defendant of all specific instances of a defendant's prior uncharged criminal, vicious or immoral conduct of which the prosecutor has knowledge and which the prosecutor intends to use at trial for purposes of impeaching the credibility of the defendant" (*see People v Grant*, 7 NY3d 421, 424 [2006]; *People v Kello*, 96 NY2d 740, 743-744 [2001]). The trial court, in its discretion and in the interests of justice, must then determine whether and to what extent "the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion" (*People v Sandoval*, 34 NY2d at 378).

The defendant correctly contended, and the People conceded, both at trial and on appeal, that they did not notify the defendant before trial of their intention to impeach him on uncharged or prior bad acts, including his failure to pay taxes. Despite the defendant's objection, the trial court ruled that *Sandoval* did not apply to prior bad acts, only convictions, and allowed the People to impeach the defendant on his failure to pay taxes without any prior notice (*see People v Beasley*, 80 NY2d 981, 982 [1992]; *People v Marrow*, 301 AD2d 673, 675 [2003]). Under these circumstances, the trial court committed error in allowing the People to cross-examine the defendant about his failure to pay taxes without conducting a pre-trial *Sandoval* hearing (*see People v Marrow*, 301 AD2d at 675 [error in permitting questioning a welfare-recipient defendant on failure to report income to Department of Social Services, without prior *Sandoval* hearing]; *People v Beasley*, 184 AD2d 1003, 1003-1004 [1992] [error in permitting cross-examination of defendant about prior uncharged bad acts]). Moreover, the court's failure to conduct a proper pretrial inquiry may have affected defendant's decision to testify at trial (*see People v Beasley*, 184 AD2d at 1003-1004).

Compounding this error, the trial court improvidently struck the testimony of one of the defendant's character witnesses Sandra Nery. The trial court had previously ruled that a letter/flyer, detailing the accusations against the defendant, which had been prepared and disseminated by the complainant's mother, should not be referred to unless the defense was prepared to have the letter/flyer introduced into evidence. However, during defense counsel's questioning of Nery, the following occurred:

"Defense: Aside from this accusation, have you heard anything about [the defendant's] reputation regarding inappropriate sexual contact with children?

"Nery: Yes.

"Defense: And what is that?

"Nery: From a letter we received."

The People objected, and, at the court's express direction, Nery was asked outside the presence of the jury, "does [the defendant] have a reputation for a lack of inappropriate sexual conduct with children," to which she responded "No." Despite defense counsel's request for an opportunity to elicit further testimony in front of the jury to clarify Nery's remarks, the trial court excused Nery, and told the jury that "for legal reasons only, the testimony of Ms. Nery is stricken, and she will not further appear." This ruling was error. By striking the entirety of the witness's testimony without explicitly instructing the jury to disregard the stricken testimony or giving any other curative instructions, the trial court left the jury with damaging negative reputation evidence of the defendant. This error, coupled with its unilateral dismissal of the witness, which impeded defense counsel's ability to develop her theory of the case, and prevented her from clarifying Nery's testimony, deprived the defendant a fair trial (*see People v Melendez*, 227 AD2d 646 [1996]).

The trial court further improvidently exercised its discretion in curtailing defense counsel's cross-examination of key prosecution witnesses. It is well settled that, absent an improvident exercise of discretion, "[t]he nature and extent of cross-examination is subject to the sound discretion of the Trial Judge" (*People v Schwartzman*, 24 NY2d 241, 244 [1969], *cert denied* 396 US 846 [1969]; *see People v Scarola*, 71 NY2d 769, 777 [1988]). However, "[a]s to those accused of crime, it should be too obvious to need reiteration that restrictions on the right to cross-examine key prosecution witnesses can deprive a defendant of an important means of combating inculpatory testimony or at least demonstrating the existence of a reasonable doubt as to guilt" (*People v Gissendanner*, 48 NY2d 543, 548 [1979]; *see Davis v Alaska*, 415 US 308, 315-317 [1974]; *Douglas v Alabama*, 380 US 415, 418 [1965]).

In light of the testimony of the complainant and her mother that the defendant was not painting in the apartment and there were no tools present, the trial court improperly curtailed crucial questioning of the mother by the defendant as to the location of his painting supplies on the staircase outside of the complainant's apartment, which furnished a legitimate reason for the defendant to be in the premises on March 16, 2006, and refused to permit defense counsel to elicit custom and habit testimony supporting the defense's contention that the defendant typically worked shirtless in performing painting jobs (see People v Lo Piccolo, 288 AD2d 913 [2001] [evidence of defendant's habits "admissible to demonstrate specific conduct on a particular occasion"] [internal quotation marks omitted]; People v Gonzalez, 100 AD2d 852 [1984]).

Additionally, the trial court erred in not permitting defense counsel's cross-examination of the complainant and her mother as to whether they spoke to each other about the questioned incidents, given that the mother and complainant both testified as to certain information being relayed to the 911 operators and the police.

Finally, although the defendant's claim that the evidence was insufficient to support the conviction of one of the counts of sexual abuse in the second degree is unpreserved for appellate review (see CPL 470.05 [2]; People v Hawkins, 11 NY3d 484 [2008]), we review this claim in the exercise of our interest of justice jurisdiction, and conclude that the evidence was legally insufficient to support that conviction for acts allegedly occurring in December 2005. Since the record is devoid of any evidence of inappropriate touching or sexual misconduct during that time period (see People v Francis, 44 AD3d 788, 790 [2007]; People v Smith, 31 AD3d 792 [2006]), the evidence did not show the elements of sexual abuse in the second degree during that period (see Penal Law § 130.00 [3]; § 130.60 [2]), and that charge must be dismissed.

Although we are satisfied, upon reviewing the record, that the verdict of guilt on the remaining counts was not against the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Romero, 7 NY3d 633 [2006]), we nevertheless "find the conclusion inescapable that the verdict of guilt in this case may not be the result of honest fact-finding," but rather the result of the combination of errors by the trial court (People v Badine, 301 AD2d 178, 183 [2002]; see People v Kass, 59 AD3d 77 [2008]; People v Cotterell, 7 AD3d 807 [2004]; People v Heman, 198 AD2d 434, 435 [1993]). In other words, it cannot be said that there is no significant prob-

ability that the verdict would have been different absent these errors (*see People v Grant*, 7 NY3d at 424; *People v Crimmins*, 36 NY2d 230, 241-242 [1975]). Accordingly, the judgment of conviction must be reversed, and a new trial is ordered (*see* CPL 470.20).

In view of the foregoing, we need not reach the defendant's remaining contentions. Mastro, J.P., Fisher, Angiolillo and Balkin, JJ., concur.