Appeal by the defendant from a judgment of the Supreme Court, Suffolk County (R. Doyle, J.), rendered September 4, 2008, convicting him of murder in the second degree, burglary in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
Ordered that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Suffolk County, for a new trial.
On May 12, 2007, the defendant and four other individuals were arrested and charged with, inter alia, murder in the second degree (Penal Law § 125.25 [3]) (felony murder), burglary in the first degree (Penal Law § 140.30 [1]), and criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), for their alleged involvement in stealing a wrist watch and marijuana from the home of the victim, Carlton Shaw, who was shot and killed during the course of the burglary on May 7, 2007. The four codefendants entered into plea agreements, while the defendant proceeded to a jury trial.
In a pretrial omnibus motion, the defendant moved, inter alia, for a hearing pursuant to People v Sandoval (34 NY2d 371, 374 [1974]; see CPL 240.43). The People consented to the hearing and in their papers, stated that “[i]f the People intend to introduce testimony of the defendant’s prior bad acts, we will move the Court, in a written application, pursuant to People v Molineux [168 NY 264] with adequate notice to defense counsel.” In an order dated March 11, 2008, the Supreme Court granted the defendant’s request for a Sandoval hearing to be conducted immediately prior to trial. However, no hearing was held, and the People never notified the defendant of their intention to impeach his credibility with respect to any prior criminal, vicious, or immoral acts.
During the jury trial, three codefendants testified against the defendant pursuant to their plea agreements, in addition to other witnesses, while the defendant was the only one to testify on his own behalf. Over defense counsel’s objection, the *1107 Supreme Court permitted the People to question the defendant extensively about two prior arrests: one for shoplifting from a Target store on February 4, 2007, and another for unlawful possession of marijuana on April 20, 2007, as well as about his school disciplinary record, including his several suspensions. The People also questioned the defendant about his mother’s incarceration as a result of an unrelated shooting of another individual.
Although the Supreme Court instructed the jury to disregard some of the questions relating to the defendant’s mother’s past, no limiting instruction was given to the jury with respect to the evidence of the defendant’s prior arrests or bad acts, despite defense counsel’s objections. Defense counsel moved for a mistrial, arguing that the prosecutor’s reference to the defendant’s mother’s shooting arrest was made for the purpose of inflaming the jury and to imply that the defendant had a propensity to shoot another person because of his mother’s behavior. The Supreme Court denied the motion for a mistrial, reasoning that it had instructed the jury to disregard the testimony at the time it was elicited.
In addition, the defendant challenged the voluntariness of his statements to the police by testifying during the trial that they were the product of verbal threats and physical abuse by the police. In this regard, the Supreme Court eventually instructed the jury on the issue of voluntariness, in relevant part, as follows:
“There is testimony that while the defendant was in custody he was questioned by the police and made certain oral and written statements . . .
“Also under our law, if you find that the defendant made the statement as a result of police questioning, you may still not consider it as evidence in the case unless the People have proven beyond a reasonable doubt that the defendant made the statement voluntarily.
“How do you determine whether the People have proven beyond a reasonable doubt that the defendant made a statement voluntarily?
“Initially under our law, before a person in custody may be questioned by the police, that person first must be advised of his rights. Second, he must understand those rights. And third, he must voluntarily waive those rights and agree to speak to the police. If any one of those three requirements is not met, a statement made in response to questioning is not voluntary and, therefore, you must not consider it.”
The defendant was convicted of murder in the second degree, *1108 burglary in the first degree, and criminal possession of a weapon in the second degree.
On appeal, the defendant argues, inter alia, that his conviction should be reversed, or alternatively, that his sentence should be reduced, because the People violated the requirements of People v Sandoval (34 NY2d at 374), the prosecutor’s questions alluding to his mother’s incarceration were highly prejudicial as they implied that he had a genetic propensity for committing crimes, the evidence was legally insufficient to support the convictions, and the verdict was against the weight of the evidence. In response, the People contend, in essence, that the trial errors, if any, were harmless. On this record, we find that the defendant was deprived of a fair trial and, accordingly, reverse the judgment of conviction and order a new trial.
Criminal Procedure Law § 240.43 provides, in relevant part, that “[u]pon a request by a defendant, the prosecutor shall notify the defendant of all specific instances of a defendant’s prior uncharged criminal, vicious or immoral conduct of which the prosecutor has knowledge and which the prosecutor intends to use at trial for purposes of impeaching the credibility of the defendant.” (See People v Grant, 7 NY3d 421, 424 [2006]; People v Kello, 96 NY2d 740, 743-744 [2001]; People v Adams, 39 AD3d 1081, 1082 [2007].) In its discretion and in the interest of justice, the trial court “must then determine whether and to what extent ‘the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion’ ” (People v Montoya, 63 AD3d 961, 963 [2009], quoting People v Sandoval, 34 NY2d at 378; see People v Hayes, 97 NY2d 203, 207-208 [2002]).
Here, over defense counsel’s objections, the Supreme Court permitted the People to question the defendant extensively about his two prior arrests, the underlying facts of those arrests, and his school disciplinary record, without providing him the opportunity to demonstrate whether there would be undue prejudice from the “unnecessary and immaterial development of previous misconduct” (People v Sandoval, 34 NY2d at 378; see People v Adams, 39 AD3d at 1082). Since the Supreme Court failed to conduct a pretrial Sandoval hearing, and the People failed to provide adequate notice to the defendant of their intention to impeach his credibility, the Supreme Court committed error in allowing the People to cross-examine the defendant about those prior bad acts, and thereby deprived the defendant of his right to a fair trial (see People v Beasley, 184 AD2d 1003, 1003-1004 [1992], affd 80 NY2d 981, 982 [1992]; People v *1109 Montoya, 63 AD3d at 961; People v Marrow, 301 AD2d 673, 675 [2003] ).
Compounding this error, the Supreme Court’s charge with respect to the voluntariness of the defendant’s confession was incomplete. Although the jury charge error was not preserved for appellate review (see CPL 470.05 [2]; People v Salnave, 41 AD3d 872, 873-874 [2007]; People v Farrell, 13 AD3d 644, 645 [2004] ), we reach this issue in the exercise of our interest of justice jurisdiction because, “[w]hen a defendant raises a factual issue regarding the voluntariness of a confession, he or she is entitled to a voluntariness charge” (People v Sanchez, 293 AD2d 499, 500 [2002]; see People v Cefaro, 23 NY2d 283, 286-287 [1968]). CPL 710.70 (3) provides that “[n]othing contained in this article, however, precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pre-trial statement made by him should be disregarded by the jury or other trier of the facts on the ground that such statement was involuntarily made within the meaning of section 60.45. Even though the issue of the admissibility of such evidence . . . was determined adversely to the defendant upon motion, the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made.” (See People v Perretti, 278 AD2d 597, 598 [2000].) A confession, admission, or other statement is “involuntarily made” by a defendant when it is obtained from him or her: “By any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant’s physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement.” (CPL 60.45 [2] [a]; see People v Graham, 55 NY2d 144 [1982].) “[T]he People must prove the voluntariness of a confession beyond a reasonable doubt” (People v Mateo, 2 NY3d 383, 416 n 20 [2004], cert denied, 542 US 946 [2004]; see People v Anderson, 42 NY2d 35, 38-39 [1977]).
Here, the Supreme Court gave the above-quoted charge to the jury, and further explained that the defendant must be advised of his right to remain silent, that anything he says may be used against him in court, and that he has a right to counsel. Additionally, the Supreme Court restated that if the People did not prove beyond a reasonable doubt that the statement was voluntarily made, then the statement should be disregarded. The
*1110 Supreme Court, however, failed to provide any instruction to the jury explaining that a statement obtained by the use, or threatened use, of physical force, or by other improper conduct, could be considered involuntarily made (see CPL 60.45 [2]). Due to the incomplete charge, the jury erroneously was deprived of any instructions regarding the standards by which to evaluate the defendant’s claim that the statement at issue had been coerced (see People v Rose, 223 AD2d 607, 608 [1996]; People v Murray, 130 AD2d 773, 774-775 [1987]).
We also note that the prosecutor made certain inappropriate remarks during summation which conveyed to the jury that there may have been additional evidence, not admitted at trial, that would further support a guilty verdict. Specifically, the prosecutor stated:
“just a moment with respect to the plea deals, yes, the cooperators who came in here and testified, the participants, . . . they did plead to lesser crimes . . .
“And at the end of this trial, ladies and gentlemen, whatever your verdict is, ... I will be downstairs in the lobby, and I will be there. And if you want to talk to me, only if you want to talk to me, I will talk to you. And we will talk about these plea deals. About [codefendant] Christopher Overton and trial decisions, and trial strategies. Anything you want to know about this case, I will be happy to answer your questions.
■ “But it’s not something for you to think about now. That is all the judge’s responsibility.”
Once again, while the defendant’s current challenge to these remarks is unpreserved for appellate review, “our Court nevertheless retains the statutory authority to reverse the conviction and order a new trial as a matter of discretion in the interest of justice upon finding that the errors at trial, although not duly protested, deprived the defendant of a fair trial” (People v Kass, 59 AD3d 77, 91 [2008]; see CPL 470.15 [3] [c]; [6] [a]). The cumulative nature of the trial errors, aggravated by these summation remarks, embodies such a situation (see People v Riback, 13 NY3d 416, 423 [2009]; People v Calabria, 94 NY2d 519, 523 [2000]; People v Gibian, 76 AD3d 583 [2010]). Although we are satisfied, upon reviewing the record, that the evidence was legally sufficient to support the convictions and that the verdict of guilt was not against the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Romero, 7 NY3d 633 [2006]), we nevertheless “find the conclusion inescapable that the verdict of guilt in this case may not be the result of honest fact-finding,” but rather the result of the trial errors (People v Badine, 301 AD2d 178, 183 [2002]; *1111 see People v Dean, 50 AD3d 1052, 1056 [2008] [“the conduct of the trial, when viewed as a whole, evinces such undue prejudice to the defendant that she was deprived of her constitutional entitlement to a fair trial”]; People v Kass, 59 AD3d at 92; People v Cotterell, 7 AD3d 807, 808 [2004]; People v Sanchez, 293 AD2d at 500). In other words, it cannot be said that there is no significant probability that the verdict would have been different absent these errors (see People v Grant, 7 NY3d at 424; People v Crimmins, 36 NY2d 230, 241-242 [1975]). Accordingly, the judgment of conviction must be reversed and a new trial ordered (see CPL 470.20; People v Gibian, 76 AD3d 583 [2010]; People v Montoya, 63 AD3d at 965-966).
In view of the foregoing, we need not reach the defendant’s remaining contentions. Covello, J.P., Santucci, Balkin and Austin, JJ., concur.