People v Pulliam (2023 NY Slip Op 03482)

People v Pulliam

2023 NY Slip Op 03482

Decided on June 28, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
PAUL WOOTEN
WILLIAM G. FORD
BARRY E. WARHIT, JJ.

2019-03607
 (Ind. No. 1954/18)

[*1]The People of the State of New York, respondent,
v
Kerry Pulliam, appellant.

Patricia Pazner, New York, NY (Caitlyn Carpenter and Anders Nelson of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, and Tess Mariel O'Leary of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Stephen Knopf, J.), rendered March 20, 2019, convicting him of robbery in the third degree and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Queens County, for a new trial before a different Justice.
According to testimony elicited by the People at trial, on August 25, 2018, at approximately 1:40 p.m., the defendant entered a department store, took pairs of footwear from the store shelves, placed them in a bag, and walked past the store cash registers, setting off the store alarm as he exited the store. A store security guard, who had watched the theft on video surveillance cameras, followed the defendant outside the store and asked him to return the property. When the defendant refused, the guard grabbed the straps of the bag containing the footwear, and the defendant pulled the bag back, reached for his back pocket, and threatened, "[K]eep going or watch what's going to happen to you." The guard, thinking that the defendant possessed a weapon and fearful for his life, retreated and summoned nearby police officers, who shortly thereafter stopped the defendant at a nearby subway station and recovered from him the bag containing the stolen footwear. At the conclusion of the trial, the jury convicted the defendant of robbery in the third degree and criminal possession of stolen property in the fifth degree.
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633). To convict a defendant of robbery in the third degree, Penal Law § 160.00 requires a threat of immediate use of physical force. "The threatened use of force may be implicit in the defendant's conduct or when viewed under the totality of facts attendant to the incident" (People v Lopez, 161 AD2d 670, 671; see People v Zagorski, 135 AD2d 594, 595). Here, [*2]the jury was justified in concluding that the totality of the defendant's actions conveyed the threat of the immediate use of physical force (see People v Sandson, 173 AD3d 905, 906).
The defendant failed to preserve for appellate review his contention that he was deprived of his right to a fair trial by the Supreme Court's participation in the questioning of the trial witnesses (see CPL 470.05[2]; People v Ojeda, 118 AD3d 919). However, we reach that issue in the exercise of our interest of justice jurisdiction.
"[A] trial judge is permitted to question witnesses to clarify testimony and to facilitate the progress of the trial, and, if necessary, to develop factual information," so long as the judge does not take on the function or appearance of an advocate (People v Adams, 117 AD3d 104, 109 [internal quotation marks omitted]). Here, the Supreme Court engaged in its own lines of inquiry, which detailed the nature of the surveillance equipment tracking the defendant, elicited a detailed description of the perpetrator and the bags he was carrying, and what the perpetrator was observed doing on the video surveillance camera, asked leading questions as to what the guard saw and heard as the perpetrator left the store and triggered the store alarm, and noted that when the guard approached the perpetrator and asked for the merchandise back, the guard even said, "please," but the perpetrator still refused to return the items.
The Supreme Court also repeated the perpetrator's allegedly threatening language, "[K]eep going or watch what's going to happen to you," and noted that it looked like the perpetrator was reaching for something and the guard did not want to find out what it was. During the direct examination of the arresting officer, the court elicited the fact that the officer observed a duffel bag containing the stolen property on the subway platform next to the defendant.
Viewing the record as a whole, the Supreme Court took on the function and appearance of an advocate, at times even engaging in a running commentary on the testimony against the defendant. The court's conduct left the impression that its opinion favored the credibility of the People's witnesses and the merits of the People's case (see People v Moulton, 43 NY2d 944, 945; People v Mitchell, 184 AD3d 875), thus depriving the defendant of a fair trial (see People v Yut Wai Tom, 53 NY2d 44; Matter of Jacqulin M., 83 AD3d 844; People v Melendez, 227 AD2d 646).
Accordingly, a new trial is warranted.
The defendant's remaining contentions need not be addressed in light of our determination.
BARROS, J.P., WOOTEN, FORD and WARHIT, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court