# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00643-COA

DONALD ALLEN CAVES A/K/A DONALD CAVES A/K/A DONALD A. CAVES                                 APPELLANT

v.

STATE OF MISSISSIPPI                                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2014 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FAILURE TO REGISTER AS A SEX OFFENDER AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND MAXWELL, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Donald A. Caves appeals the conviction entered against him on April 9, 2014, by the

Pearl River County Circuit Court for failure to register as a sex offender pursuant to

Mississippi Code Annotated section 45-33-33 (Supp. 2014).[1] The trial court sentenced Caves as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Supp. 2014) to life in the custody of the Mississippi Department of Corrections without the possibility of parole.[2] On appeal, Caves argues: (1) the trial court erred in excluding the testimony of a defense witness, and (2) the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm Caves's conviction and sentence.

## FACTS

¶2. In May 2012, Caves; his live-in girlfriend, Amber Thomas; and his children moved from the home Caves had lived in for twenty years to another home two blocks away. Caves and Thomas both testified that the previous home was unsanitary. Caves testified that a Department of Human Services social worker visited his family and informed them that their home had mold and that they could not continue to live there. Caves testified that based on this information, he moved his family to the new home.

¶3. In 1990, Caves was convicted of touching of a child for lustful purposes and is required by section 45-33-33 to register as a sex offender and to notify the Department of Public Safety (DPS) of any changes to his residency. In 2012, Caves failed to personally appear at the DPS and register ten days before moving his family to the new residence.

_____

[1] Section 45-33-33(2)(a) provides a maximum sentence of "imprisonment in the custody of the Department of Corrections for not more than five (5) years[.]"

[2] The procedural history reflects that a Pearl River County grand jury indicted Caves for sexual battery and failure to register as a sex offender under section 45-33-33. Both the State and Caves's appointed counsel agreed to proceed to trial on the failure-to-register charge, saving the sexual-battery charge for a later date.

Consequently, Caves was arrested.

¶4.    On June 6, 2013, a Pearl River County grand jury indicted Caves for sexual battery and failure to register as a sex offender under section 45-33-33.  The indictment was later amended to charge Caves as a habitual offender under Mississippi Code Annotated section 99-19-83.  Both the State and Caves's appointed counsel agreed to proceed to trial on the failure-to-register charge, saving the sexual-battery charge for a later date.

¶5.    Caves testified in his own defense at trial, stating that he lacked the ability to read or write, and thus possessed no actual knowledge that he had a duty to appear at the DPS ten days before he planned to move.  The jury heard testimony from the following:  Chris Robbins, an investigator with the Pearl River County Sheriff's Department; Thomas, Caves's former girlfriend; Kristin Thibodeaux, the records clerk for the Pearl River County Sheriff's Department; and Charlie Hill, acting director of the sex-offender registry for the State.

¶6.    Thomas testified that she and Caves dated for about two and a half years, and that she knew that the sex-offender statute required Caves to re-register as a sex offender every ninety days and to notify the registration office of any change of address.  Thomas stated that Caves did not attempt to re-register as a sex offender when they moved.  Thomas testified that she had accompanied Caves in the past when he would go to register as a sex offender.  Regarding Caves's ability to read and write, Thomas testified, "He can read, but not like high school level," and "I've seen him write."  Thomas further specified that to her knowledge, Caves "[doesn't] have difficulty" reading and writing.

¶7.    Thibodeaux testified that as the records clerk of the sheriff's department, she fills out

3

the initial and re-registration paperwork for sex offenders. Thibodeaux testified that she personally went over the registration paperwork with Caves, and she also read the forms to him. Thibodeaux affirmed that she read the form to Caves, informing him that he possessed the duty to record any change of address by personally appearing at the DPS driver's license station not less than ten days before changing addresses. Caves admitted that someone read the forms to him, but testified that the person read them too fast, and he could not understand the substance of the forms.

¶8.    After the State rested, Caves's attorney informed the trial court that Caves would like to introduce Erica Fraught as a defense witness. Caves stated that Fraught's testimony would confirm that he was unable to read and write, and that she had to read and explain things to him regularly. The trial court excluded Fraught's testimony, ruling that the issue of whether Caves could read or write was not a pivotal issue in the case. The trial court further explained that "it's potentially confusing to the issue when you've had both [Thibodeaux and Investigator Chris Robbins] testify they actually read from the documents to him."

¶9.    After the trial, the jury found Caves guilty of failing to register as a sex offender. Because Caves was indicted as a habitual offender under section 99-19-83, he was sentenced, upon conviction, to life without the possibility of parole. Upon denial of his post-trial motions, Caves filed his notice of appeal.

## STANDARD OF REVIEW

¶10.   "The standard of review regarding admission or exclusion of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court will not

4

reverse unless the error adversely affects a substantial right of a party." *Whitten v. Cox*, 799 So. 2d 1, 13 (¶27) (Miss. 2000) (citation and internal quotation marks omitted). "Unless the trial court has so abused this discretion as to prejudice the defendant's case, we will not reverse the ruling of the trial court." *Tidwell v. State*, 806 So. 2d 1146, 1148 (¶7) (Miss. Ct. App. 2002) (citation omitted).

¶11.   In *Daniels v. State*, 107 So. 3d 961, 963 (¶¶10-12) (Miss. 2013), the supreme court explained:

> [A] de novo standard of review [applies] to a trial court's denial of a judgment notwithstanding the verdict [(JNOV)]. A motion for [a JNOV] is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a motion for [a] JNOV if there is substantial evidence to support the verdict.
>
> "Substantial evidence" is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. The evidence is viewed in the light most favorable to the verdict.
>
> A motion for a new trial falls within a lower standard of review than does that of a [JNOV] or a directed verdict. A motion for a new trial simply challenges the weight of the evidence. The [s]upreme [c]ourt will reverse the lower court's denial of a motion for a new trial only if, by doing so, the court abused its discretion.

(Internal citations and quotation marks omitted).

## DISCUSSION

### I.   Exclusion of Witness Testimony

¶12.   Caves asserts that he was "essentially sentenced to serve life without the possibility of parole for failure to meet a deadline." In his appellate brief, Caves maintains that he is illiterate and was found by a circuit court judge in 1990 to be mentally retarded. However,

5

nothing in the record substantiates this assertion. Caves claims that because of his inability to read the registration requirements, he lacked actual knowledge of his duty to appear in person ten days before he intended to move.[3]

¶13.    Upon review of this assignment of error, the record reflects that the trial judge excluded the witness testimony of Fraught because

> a subjective observation by someone that knows [Caves] is not a conclusive determination of what his abilities are to read or not or his inability to read. And it's potentially confusing to the issue when you've had both [Thibodeaux and Investigator Robbins] testify they actually read from the documents to him.

As stated previously, the record shows that Fraught was expected to testify that she had known Caves for many years and that he could not read or write. Since the ability to read and write provides no defense to compliance with the statutory requirement for sex-offender registration, the trial court excluded the testimony due to its lack of relevancy and potential to confuse the issues and mislead the jury. *See* M.R.E. 402 (stating that relevant evidence is usually admissible); M.R.E. 403 (stating that relevant evidence may be excluded if it would cause confusion or mislead the jury).

¶14.    Caves argues that the trial court erred in excluding Fraught's testimony regarding Caves's ability to read and write, thus depriving Caves of the ability to present a defense at

---

[3] Mississippi Code Annotated section 45-33-29(1) (Rev. 2011) states that "[u]pon any change of address, including temporary lodging, an offender required to register under this chapter is required to personally appear at a Department of Public Safety [d]river's [l]icense [s]tation not less than ten (10) days before he intends to first reside at the new address." "The failure of an offender to personally appear at a Department of Public Safety [d]river's [l]icense [s]tation or to provide any registration or other information, including . . . reregistration [or] change of address information . . . required by this chapter[,] is a violation of this chapter." Miss. Code Ann. § 45-33-33(1)(a).

trial. Caves claims that Fraught's testimony was central to his defense that he lacked actual knowledge of his duty to re-register under section 45-33-29(1) due to his inability to read and write. Caves maintains that if Fraught had been allowed to testify, she would have testified that Caves was unable to read and write, and that she had to read and explain things to him regularly. Caves argues that his defense centered around his intellectual disabilities and his lack of actual knowledge of his duty to inform the Department of Public Safety (DPS) ten days prior to changing residences. Caves asserts that Fraught's testimony would show that Caves lacked actual knowledge of his duty to inform the DPS because he was unable to read and understand the registration requirements. At trial, the State objected to Fraught's testimony because she was not disclosed to the State during discovery as a potential witness for the defense. *See* URCCC 9.04 (requiring the defendant to disclose potential trial witnesses).

¶15. As previously acknowledged, at trial, the judge excluded Fraught's testimony on different grounds, stating:

> [T]he witness will be excluded, but not for the reason that it's unfair surprise or the State hasn't had notice. . . .
>
> The reason the witness will be excluded is the court finds that . . . both the investigator and [Thibodeaux] testified that they read to [Caves] under sworn testimony the contents of documents. And the court finds that a subjective observation by someone that knows [Caves] is not a conclusive determination of what his abilities are to read or not or his inability to read. And it's potentially confusing to the issue when you've had both witnesses testify they actually read from the documents to him. So the ability to read is not — or inability to read is not the pivotal issue in the court's view.

¶16. Caves maintains that the issue at trial was not simply whether he knew he possessed

a duty to register, but whether he had actual knowledge that he was "required to personally appear at a Department of Public Safety [d]river's [l]icense [s]tation not less than ten (10) days before he intends to first reside at the new address." Miss. Code Ann. § 45-33-29(1). As a result, he argues that Fraught's testimony constituted relevant evidence.

¶17.    The Mississippi Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Caves also relies on Rule 402, which states that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules." M.R.E. 402. Caves also asserts that the trial court erred in not adhering to the procedure set out in Rule 9.04(I)[4] of the Uniform Rules of Circuit

---

[4] Rule 9.04(I) of the Mississippi Rules of Circuit and County Court provides a procedure for instances where a party has failed to comply with the discovery rules. The rule states, in part:

> If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
>
>> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
>>
>> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

and County Court, which requires that the trial court grant continuances and only exclude evidence as a last resort for discovery violations. Caves argues that although the trial court did not exclude Fraught's testimony based on the State's assertion that the defense failed to disclose Fraught as a potential witness in discovery, any discovery violation could have been easily cured by granting a short continuance in order for the State to investigate.

¶18.    As previously stated, Thomas, Caves's ex-girlfriend, provided testimony that she had witnessed Caves read and write. Thomas also testified that Caves possessed awareness that the sex-offender statute required Caves to notify the DPS of any change of address. *See* Miss. Code Ann. § 45-33-29(1). Thibodeaux, the records clerk for the sheriff's department, testified that she personally reviewed and explained the sex-offender registration paperwork with Caves and personally read the forms to him. Investigator Robbins of the Pearl River County Sheriff's Department testified that when he arrested Caves, he read Caves his *Miranda*[5] rights and also verbally explained these rights to Caves, as well as the charge against him. In his decision to exclude Fraught's testimony, the trial judge referred to Thibodeaux and Investigator Robbins's testimony providing that they both read the forms aloud to Caves, and explained that "it's potentially confusing to the issue [to allow Fraught's testimony] when you've had both [Thibodeaux and Investigator Robbins] testify they actually read from the documents to him."

---

3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶19. In *Gribble v. State*, 760 So. 2d 790, 791 (¶1) (Miss. Ct. App. 2000), Quancidine Gribble was charged with simple assault against her husband, Robert Gribble. At trial, the State sought to introduce Robert's divorce complaint into evidence to show that he was claiming cruel and inhuman treatment. *Id*. at 792 (¶4). The trial judge refused to admit the complaint into evidence, explaining that the jury already heard testimony that a divorce was pending and that the grounds were cruel and inhuman treatment. *Id*. Upon review, this Court found no error in the trial court's exclusion of the divorce complaint, stating that "admitting the actual divorce complaint in conjunction with the testimony about the grounds for divorce would unnecessarily confuse the jury as to the issue in question in the pending case rather than benefit the jury." *Id.* at 793 (¶9).

¶20. "The admissibility of evidence rests within the discretion of the trial court, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." *Palmer v. State*, 939 So. 2d 792, 794-95 (¶7) (Miss. 2006). After our review of the record before us, we find that the trial court did not err in excluding Fraught's testimony.

## II. Weight of the Evidence

¶21. Caves claims that the verdict is against the overwhelming weight of the evidence, and as a result, the trial court erred in not granting Caves a JNOV or, in the alternative, a new trial. Caves states that the evidence at trial showed that he "lacked actual knowledge of the intricacies of the duty to notify the DPS" of his intent to change his residence. Caves asserts that because he cannot read and has been found to be mentally retarded, allowing a

conviction and sentence of life without the possibility of parole to stand based on a technicality would sanction an unconscionable injustice.

¶22. Caves maintains that the overwhelming weight of the evidence shows that he lacked actual knowledge of his duty to appear in person at a DPS driver's license station ten days before he intended to first reside in a new home. Caves argues that since he had never lived anywhere other than his first residence on Lee Street in Carriere, Mississippi, he had never dealt with any of the requirements of the statute other than the re-registration every ninety days. Caves argues that he did not understand that he was required to notify the DPS in person ten days before moving.

¶23. The Mississippi Supreme Court has held that "[t]he issue of whether [the defendant], beyond a reasonable doubt, had actual or probable knowledge of the duty to register as a sex offender is a factual issue for a jury to decide." *Garrison v. State*, 950 So. 2d 990, 994 (¶11) (Miss. 2006). In *Garrison*, the defendant claimed that he lacked notice that state law required him to register as a sex offender. The *Garrison* court relied on *Lambert v. California*, 355 U.S. 225 (1957), wherein the United States Supreme Court established:

> In cases where circumstances are completely lacking which might move one to inquire as to the necessity of registration and the defendant's conduct is merely passive, the State must prove actual knowledge of the duty to register or proof of the probability of such knowledge and a subsequent failure to comply with the duty to register.

*Garrison*, 950 So. 2d at 994 (¶12) (citing *Lambert*, 355 U.S. at 228-29).

¶24. Our review of the record reflects that during the trial, the jury heard testimony from Thomas, who stated that Caves could indeed read and write. Thomas also testified that she

11

had previously accompanied Caves when he re-registered as a sex offender. Thibodeaux, the records clerk for the sheriff's department, also testified that she personally read the sex-offender registration forms to Caves, including the form listing his duty to record any change of address by personally appearing at the DPS driver's license station not less than ten days before changing addresses.

¶25. The trial court admitted the sex-offender registration forms into evidence. The forms reflected that Caves initialed the forms as acknowledging that he received them. Caves also provided testimony during trial admitting that someone told him what his duties would entail if he ever moved, but stated, "they read [the duties] so fast I couldn't understand them. Just me being in a hurry to get out of there, I just signed [the form] and told them I understood it. I really didn't." Charlie Hill, acting director of the sex-offender registry for the State, testified that the sex-offender registration office possessed no documentation showing that Caves had updated his registration since January 10, 2011. The evidence also showed that on July 12, 2012, Caves completed the personal information on the *Miranda*-warning form where he identified his address as 47 Camellia Street, Carriere, Mississippi.

¶26. After the trial, the jury received a jury instruction regarding notice, which provided:

> In general, mistake or ignorance of the law is no defense. However, mistake or ignorance of the law can be a defense when the defendant has a duty to act but is unaware of the duty. Therefore, you must find the State has proven beyond a reasonable doubt that [Caves] had actual knowledge or the probability of such knowledge of the duty to appear at a [DPS] [d]river's [l]icense [s]tation not less than ten (10) days before he intends to first reside at a new address. If the State has proven this beyond a reasonable doubt, then you must find [Caves] "Guilty."

¶27. After our review of the record, we find that substantial evidence exists to support the

12

jury's verdict finding Caves guilty of failing to register as a sex offender. *See Daniels*, 107 So. 3d at 963 (¶¶10-12). This Court will not disturb the jury verdict. Furthermore, the trial court's denial of Caves's motion for a JNOV or, in the alternative, a new trial, is hereby affirmed.

¶28. **THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF FAILURE TO REGISTER AS A SEX OFFENDER AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**