# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01352-COA

**YOGINDER DANDASS A/K/A YOGINEER**        **APPELLANT**
**DANDASS A/K/A YOGI DANDASS**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/2015 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MERRIDA COXWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO TWENTY-FIVE YEARS, WITH TWENTY YEARS TO SERVE AND FIVE YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, AND TO PAY A $3,000 FINE AND REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED - 05/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Yoginder Dandass was convicted of sexual battery against his adoptive daughter, Sara.[1]  The trial court sentenced Dandass to a term of twenty-five years in the custody of

---

[1] To protect the identity of the minor child, she will be referred to by the fictitious name "Sara."

Mississippi Department of Corrections, with five years suspended. Dandass appeals his conviction and sentence on numerous grounds. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Dandass and his wife, Wendy, adopted Sara when she was nine years old. Sara was living in a Russian orphanage when she was adopted. The Dandasses also had two natural children of their own. Sara knew little English and was provided a private tutor for a few months before she was brought to the United States. At trial, Sara testified that the language barrier remained a problem for her. She had not had a family before being adopted and did not know how to function in one. She testified that she was punished often and did not understand what was expected of her.

¶3. Sara was brought to Starkville and placed in public school, but still battled with a language barrier. Sara testified that her relationship with her father began to change as she grew older. According to Sara, Dandass initiated sexual contact with her when she was around eleven years old. Dandass began with asking her to touch him while he was wearing clothes. Sara testified that the first incident of sexual abuse occurred when she was invited to a sleepover at her friend Katya's home. Katya spoke Russian and helped Sara translate when she first arrived to Starkville.

¶4. Sara testified that she went to ask her parents for permission to spend the night at Katya's house, but only her father was at home. She asked him if she could spend the night at her friend's house, and he replied by telling Sara to hang up her phone. Sara complied and Dandass took Sara's hand and placed it in his genital area. Dandass proceeded to take his

2

shirt and shorts off and told Sara to place her hand on his penis. According to Sara, she knew that if she did not, her father would not allow her to go to her friend's sleepover.

¶5. Sara testified that her father had her perform oral sex on him many times. The sexual contact continued until Sara was seventeen. Sara testified that she performed the acts out of fear and manipulation. She also testified that she was not physically forced to perform the sexual acts on her father. She could leave his room and refuse to perform the acts, but she knew there would be consequences if she left. According to Sara, Dandass would punish her for refusing his sexual advances by taking away her art supplies and sometimes slapping her. Sara did not report her sexual contact with Dandass to the police or any of her friends.

¶6. The sexual contact between Dandass and Sara always occurred in his and Wendy's bedroom, when the family was away. Most of the contact consisted of oral sex and touching, but Dandass attempted to initiate vaginal intercourse on one occasion. Sara testified that she refused. According to Sara, she also saw Dandass looking at provocative pictures of her on his computer.

¶7. Sara did not bond well with her adoptive family. She did not enjoy many of the activities that they engaged in, and her personality did not mesh well with her mother's personality. According to Sara, she always wanted a strong relationship with her mother, but her mother always pushed her away.

¶8. At trial, Dandass denied having any sexual contact with Sara. He claimed to have noticed some tension between Sara and the rest of the family, but had not realized the extent of the friction until Sara was in the eleventh grade. According to Dandass, her desire to

3

attend the Savannah College of Art and Design (SCAD) added to the tension. Tuition at SCAD was expensive, and Dandass noted that the school was unaccredited. Dandass wanted Sara to attend Mississippi State University where Sara could attend for free, since both Dandass and his wife worked there.

¶9. Dandass contended that Sara's desire to attend SCAD increased once her high-school art teacher promised her a full scholarship. Dandass testified that he attempted to bring Sara off "cloud nine" because SCAD was expensive, and it was almost impossible that her art teacher could procure a full scholarship for her. Dandass contended that he reinforced the option of Sara attending Mississippi State University, because it would be free to attend, and she could live at home with the family. According to Dandass, Sara did not relent on her desire to attend SCAD. Dandass further testified that Sara idolized her art teacher, and her desire to attend SCAD was cemented when she began dating the art teacher's son.

¶10. Dandass did not have a favorable opinion of Sara's boyfriend. Dandass contended that Sara's boyfriend was the person who made the initial allegations against him, because of Dandass's dislike of him. The State objected to this statement, since the court had previously ruled that Sara's romantic past was improper to discuss. The court sustained the objection. Dandass's theory of the case was that Sara fabricated the sexual-abuse allegations in retaliation for Dandass discouraging her attendance to SCAD and to get out of the Dandass family home.

¶11. At trial, Wendy claimed that Sara fit in well with the family at first but did not bond with the family over time. According to Wendy, the friction increased as Sara aged, and the

4

situation worsened when Sara began dating her high-school art teacher's son. Wendy agreed with Dandass that much of the tension with Sara related to her desire to attend SCAD.

¶12. During the State's case-in-chief, it introduced two photos of Sara in provocative poses. Sara previously testified that Dandass asked her to pose provocatively in the photos, which were taken by Sara's friend. To rebut those claims, the defense sought to have a forensic specialist, Greg Bott, testify that the "cookies" on the family computer—which was used by all members of the household—were sexual in nature from pornographic websites. The defense sought to use Bott's testimony to argue that this search history provided an alternative source for Sara's sexual knowledge, and gave her the desire to take provocative photos. The trial court found the defense's evidence irrelevant and inadmissible, since the defense could not prove that it was Sara who went to those pornographic websites.

¶13. The defense also sought to introduce a painting that Sara made for Dandass at trial. The defense's theory was that Sara would not have painted anything for Dandass if he was sexually abusing her. The trial court also found the painting to be irrelevant, since it could not prove or disprove the allegations of sexual abuse.

¶14. Dandass asserts five assignments of error on appeal. First, he asserts that the State was allowed to bolster the victim's testimony with hearsay. Second, he argues that the State's closing argument infringed on his right to a fair trial. Third, the trial court erred in admitting the State's improper rebuttal evidence, and denying Dandass's rebuttal evidence. Fourth, the verdict was against the overwhelming weight of the evidence. Fifth, the trial court erred by excluding expert testimony and evidence that would support Dandass's case-

5

in-chief.  Finding no error we affirm.

## DISCUSSION

**I.     Whether the State impermissibly bolstered Sara's testimony with the testimony of other witnesses.**

*A.     Whether testimony by Sara's friend constituted inadmissible hearsay.*

¶15.    Dandass asserts that the trial court committed reversible error when it allowed Sara's friend Hannah to testify regarding provocative photos she allegedly took at Dandass's behest. According to Hannah, Dandass told Sara to take pictures of herself, because he believed that she could be a model.  Sara went to Hannah's home, and Hannah testified that she took pictures of Sara, including nude photos.  The defense objected to Hannah's testimony on the ground that it was hearsay.  Nevertheless, the trial court overruled the objection, finding that her testimony was admissible under Mississippi Rule of Evidence 801(d)(1)(B).

¶16.    "This Court's standard of review for the admission of evidence is abuse of discretion." *Hobgood v. State*, 926 So. 2d 847, 853 (¶16) (Miss. 2006) (citing *Clark v. State*, 891 So. 2d 136, 139 (¶11) (Miss. 2004)).  "Therefore, unless that discretion is abused this Court should not overturn the trial court's ruling." *Id.*  Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter" and is generally not admissible at trial. *Moss v. State*, 977 So. 2d 1201, 1207 (¶5) (Miss. Ct. App. 2007).  One exception to the general rule barring hearsay testimony is found in Rule 801(d)(1)(B). *Id.*

Rule 801(d)(1)(B) permits the introduction of a prior consistent statement if (1) the declarant has testified at the trial and been subject to cross-examination,

6

> (2) the testimony of the witness as to the prior statement was consistent with the declarant's testimony as a witness, [and] (3) the prior statement was offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

*Moss,* 977 So. 2d at 1207 (¶5).

¶17. Dandass argues that since Sara was not impeached by the defense regarding whether Dandass asked her to take the pictures, Hannah's testimony was inadmissible hearsay, and it should not have been admitted into evidence. Dandass also contends that the hearsay exception does not apply since the allegations against Dandass were not a recent fabrication, due to Sara's dislike of the Dandass family over a course of years. We do not agree.

¶18. Sara testified at trial before Hannah's testimony was admitted. Sara was subject to cross-examination, and the defense's neglect to question her regarding her statements to Hannah does not result in Hannah's testimony being inadmissible hearsay. Moreover, Hannah's testimony was consistent with Sara's testimony, which satisfies the second prong of the exception. Furthermore, Dandass's case-in-chief focused on attacking Sara's credibility. Dandass's defense theory sought to paint Sara as a liar who fabricated the sexual-abuse allegations against Dandass, because he was preventing her from attending the college of her choice and disliked Sara's boyfriend. Dandass implied at trial that Sara's boyfriend, and not Sara, made the initial allegations of sexual abuse since he did not have a favorable opinion of Sara's boyfriend or his father, the high-school art teacher. Hannah's testimony rebutted the defense's theory of fabrication and substantiated Sara's abuse claims. The trial court found that Hannah's testimony was not hearsay, and we agree.

7

### B. Whether Sara's recorded interview with Beverly Moorehead constituted inadmissible hearsay.

¶19.    Dandass argues that the trial court erred when it admitted Sara's recorded interview with forensic interviewer Beverly Moorehead into evidence. Dandass's defense counsel filed a pretrial motion to prohibit the State from playing Sara's interview with Moorehead on the grounds that the interview contained numerous hearsay statements. During the pretrial hearing, the State argued that the statement fell under the "tender years" exception or "medical treatment" exception. The court noted a potential hearsay issue but found the motion to prohibit the DVD premature.

¶20.    During a later motion hearing, both parties agreed that the tender-years exception did not apply. The State noted that though the exception did not apply, it may have had other avenues to admit the statement into evidence. During trial, the State offered the DVD of the interview into evidence. Dandass's counsel objected on the basis that it was cumulative. The trial court overruled the objection and allowed the DVD into evidence. Dandass asserts that the admission of the DVD was a reversible error, as it constituted hearsay without an exception. We do not agree.

¶21.    The State asserts that the DVD was admissible under Mississippi Rule of Evidence 803(4), which provides that a statement is not hearsay if it is made for purposes of medical diagnosis or treatment and describes medical history, or past or present symptoms, pain, or sensations, or their inception or general cause, and is supported by circumstances that substantially indicate its trustworthiness. Dandass argues that Rule 803(4) does not apply, because the State cannot satisfy the two-prong requirement for application of the rule.

8

¶22. The following must be met for Rule 803(4) to apply:

> First, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment. . . . [S]tatements made by a child abuse victim that the abuser is a member of the immediate household are reasonably pertinent to treatment, as treatment encompasses treating emotional and psychological injuries and is relevant to prevention.

*Branch v. State*, 998 So. 2d 411, 414 (¶10) (Miss. 2008) (quotation marks omitted).

¶23. Dandass asserts that the State cannot satisfy the second requirement of the two-prong test, because Dandass was required to leave the family home after Sara made the statement and was no longer a member of the household at the time of the interview. We do not find this argument compelling.

¶24. Moorehead was qualified by the State as an expert forensic interviewer for child-sex-abuse cases. Moorehead testified to her observations of Sara during the interview. She testified that Sara's statements were consistent with a child who had been sexually abused. Moorehead testified as to the indicators that she looks for to determine the consistency of a victim's statements and explained certain clues that may have been beyond a juror's understanding as a layperson in relation to the video.

¶25. Dandass challenges the admission of the video solely because he was required to move out of the home after allegations that he sexually abused his daughter. Dandass was a member of the household when Sara made her initial complaint to the authorities. Moreover, a mere technicality of Dandass having to move out of the family home should not prohibit the application of this rule. "The admissibility of evidence rests within the discretion

9

of the trial court, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." *Caves v. State*, 179 So. 3d 1175, 1180 (¶20) (Miss. Ct. App. 2015) (quoting *Palmer v. State*, 939 So. 2d 792, 794-95 (¶7) (Miss. 2006)). We do not find that admission of the DVD prejudiced Dandass. Accordingly, we find no error.

### C. Whether additional hearsay statements constitute plain error.

¶26. Dandass asserts that the State elicited hearsay statements from its witnesses that were inadmissible. Dandass maintains that though the trial counsel failed to object to the statements, the admission of those statements constitutes plain error. Dandass argues that the State used those impermissible hearsay statements to argue to the jury that the State's witnesses' statements supported Sara's allegations. Dandass contends that the culmination of the witness statements amounted to improper bolstering. We do not agree.

¶27. "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected [the] defendant's substantive rights, causing a manifest miscarriage of justice." *Rodgers v. State*, 166 So. 3d 537, 545 (¶15) (Miss. Ct. App. 2014) (citing *Flora v. State*, 925 So. 2d 797, 811 (¶42) (Miss. 2006)). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Conners v. State*, 92 So. 3d 676, 682 (¶15) (Miss. 2012).

¶28. During closing arguments, the prosecutor reiterated statements made by all witnesses that testified at trial. He discussed the testimony elicited from the State's witnesses, and highlighted the statements that corroborated Sara's account of sexual abuse. Prosecutors are

10

permitted to draw inferences and discuss testimony elicited at trial, and we do not find that the prosecutor's statements were made in error. Moreover, we find that the assigned error is procedurally barred.

¶29. "[U]nobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." *Shaheed v. State*, 205 So. 3d 1105, 1111 (¶16) (Miss. Ct. App. 2016) (quoting *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991)). "Hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy." *Id.* (citing *Burns v. State*, 438 So. 2d 1347, 1350 (Miss. 1983)).

¶30. Dandass's trial counsel neglected to object to the witness statements and failed to object to the reiteration of those statements during the State's closing arguments. A careful review of the record shows that Dandass's trial attorney objected to numerous statements made during the State's closing arguments but not the statements that Dandass now assigns as error on appeal. "It is axiomatic that a litigant is required to make a timely objection." *Willie v. State*, 204 So. 3d 1268, 1276 (¶21) (Miss. 2016) (quoting *Walker v. State*, 671 So. 2d 581, 597 (Miss. 1995)). The Mississippi Supreme Court has "repeatedly held that if no contemporaneous objection is made, the error, if any, is waived." *Id.* Accordingly, we find no error.

II. **Whether the prosecutor's closing arguments improperly vouched for the State's witness and impermissibly impugned Dandass's**

**integrity, in violation of his right to a fair trial.**

¶31.  Dandass contends that his Sixth Amendment rights were violated during the prosecutor's closing remarks.  Dandass maintains that the prosecutor improperly vouched for State witnesses in several portions of his closing arguments.  Dandass notes that his trial counsel failed to object to the prosecutor's statements.  Nevertheless, Dandass asserts that the prosecutor's remarks constitute plain error and that his case should be reversed on those grounds.  After careful review, we find no error.

> A.    *Whether the prosecutor's closing remarks constituted improper vouching.*

¶32.  Dandass argues that several remarks made by the prosecutor in his summation improperly vouched for the credibility of testimony that supported the State's theory of the case.  However, those remarks were taken out of the context of the prosecutor's closing statements.  The first remark, placed in context, does not support Dandass's assertion of plain error.  The first remark in context reads:

> And Sara said her dad was having her take, and these pictures were on his computer.  So do these pictures prove what Sara said?  That he forced her to perform oral sex on him?  No.  They proved that there were pictures of Sara half dressed on his computer.  *But [Sara] was telling the truth about the pictures.  She didn't lie to you about these [pictures].  Hannah backs up what Sara said about these pictures.*

(Emphasis added).  Taken out of context, one could argue that the prosecutor was making personal assurances of the witness's veracity.  However, placing the allegedly improper remark in context of the preceding statements, the prosecutor reiterated that Sara was telling the truth regarding the provocative pictures that were found on Dandass's computer.

12

Accordingly, we find no error.

¶33. The second challenged remark placed in context provides:

> [Sara] [t]old Freddie [Bardley] the same thing she's told everybody else, "He made me suck his penis since I was 11." Then she talks to Kenny [Watkins], the first statement, same thing. Truth. Same thing. Then she talks to Moorehead. [You all] watched her. Same thing. [Sara] . . . writes Kenny another statement. Same thing. Every single time. Are these statements different from one another? So some contain things that the other one doesn't? *Did [Sara] say every word to you guys on the witness stand that's contained in these statements? No. You know what that is? That is telling the truth. Had she wanted to make this all up, she would [not] have had her story straight to where she could say exactly every single time, the same thing.*

(Emphasis added). The prosecutor reiterated to the jury that Sara's recounting of the sexual abuse by her father was consistent. Her statements to several different individuals did not change. Though the use of the term "truth" could be viewed as attesting for the veracity of her statements, this statement was not a reversible error. In view of the context of the statements and Dandass's theory of the case (that Sara lied about being sexually abused, because she wanted to attend the college of her choice), the prosecutor drew inferences from the evidence presented at trial.

¶34. The supreme court has stated that "[a]n impassioned argument is not in itself an improper argument." *Goff v. State*, 14 So. 3d 625, 654 (¶116) (Miss. 2009) (quoting *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998)). "Furthermore, the prosecutor, as any other counsel, is free to recall and comment on testimony offered in evidence and to draw inferences. The prosecutor may comment upon any facts introduced into evidence. He may draw whatever deductions seem to him proper from these facts." *Id.* Accordingly, we find no error with this statement.

¶35.    The third remark placed in context provides:

> And the time that you heard from him, he wouldn't answer a straight question when I asked him. *He was arrogant, and he lied to you.* He said "I got on my computer to do work after the police left." What did Vickie Roberts tell us yesterday? He deleted folders of information off of his computer and then ran a defrag to where nobody could tell what it was that he deleted. *He lied to you. She did not.*

(Emphasis added). In closing, the prosecutor reiterated that Dandass was a computer professor who possessed knowledge on how to clear computers of incriminating information. Sara alleged that Dandass had provocative pictures of her on his computer, which supported the sexual-abuse allegations. Prosecutors are allowed to make reasonable inferences and draw deductions from the facts. We find no error.

¶36.    The fourth and fifth challenged statements placed in context include:

> You heard from a lot of people. One way we as humans determine who to believe is reasons people have to lie. *What reason does Sara have to lie*? She's out of their house. She has nothing to do with them anymore. . . . She got up here in front of a roomful of strangers and talked about heinous things that happened to her. She knew things about her father - - that his penis was uncircumcised - - that no little girl should know. That no 20-year-old should know. *She didn't have to do it but, it's the truth.*

(Emphasis added). Here, the prosecutor made reasonable inferences since Sara was near the age of majority at trial and no longer had contact with the Dandass family. The prosecutor commented upon facts derived from trial and made an impassioned argument about the reasons that Sara could have forgone the pursuit of the case.

¶37.    "The question for this Court is whether the prosecutor's remarks denied the defendant a fundamentally fair trial." *Byrom v. State*, 863 So. 2d 836 (¶123) (Miss. 2003) (quoting *Lockett v. State*, 517 So. 2d 1317, 1333 (Miss. 1987)). "The prosecutor's remarks are viewed

14

in light of the entire trial." *Id.* "It is imperative that the statements be read in their appropriate context in light of that which the prosecutor was in fact arguing to the jury at the time." *Holland v. State*, 705 So. 2d 307, 347 (Miss. 1997).

¶38. Dandass's brief also cites five additional remarks of similar statements that he contends were plain error. For the plain-error doctrine to apply, there must have been an error that results in a manifest miscarriage of justice or "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Conners*, 92 So. 3d at 682 (¶15) (quoting *Brown v. State*, 995 So. 2d 698, 1703 (¶21) (Miss. 2008)). After placing the prosecutor's closing arguments in context of the closing remarks, we do not find them to have seriously affected Dandass's right to a fair trial. Therefore, we find no error.

> B. Whether the prosecutor's statements referring to Dandass as a "sexual predator" who "groomed the victim" constitute reversible error.

¶39. Dandass asserts that the use of the term "groom" coupled with the term "sexual predator" in the prosecutor's closing arguments was a reversible error. Dandass argues that in using the term "groom," the prosecutor offered his personal opinion unsupported by the evidence. Dandass contends that in child-sexual-assault cases, expert testimony is required to define the term "groom." In Mississippi, very few cases have addressed groom as a term of art for sexual purposes. Neither this Court nor the supreme court has found that a prosecutor cannot use the term "groom" in closing arguments when addressing sexual-assault cases. In the context of the prosecutor's closing arguments, we find no error.

¶40. Dandass cites several cases in different jurisdictions that have held that the use of the

term of "groom" in sexual-abuse cases is beyond the understanding of a jury of laypersons, and requires expert testimony to define and explain its meaning. Dandass cites four jurisdictions that have found that the term "groom" is too difficult for a jury of laypersons to understand. However, several jurisdictions have also found expert testimony was either inadmissible or superfluous to define "groom" to the jury.

¶41. In *State v. Sena*, 192 P.3d 1198, 1204 (¶20) (N.M. 2008), the New Mexico Supreme Court found that expert testimony was not needed to explain to the jury how the defendant's behavior showed his sexual intent or his lack of mistake or accident. The court opined that lay witnesses and laypersons on the jury were well equipped to understand how the defendant's behavior proved his sexual intent. *Id.*

¶42. In *State v. Braham*, 841 P.2d 785, 790 (Wash. Ct. App. 1992), the Washington Court of Appeals found that it was unable to conceive of any basis for the admission of expert testimony to explain "grooming," since an expert opinion was not necessary to explain that an adult in a close relationship with a child will have a greater opportunity to engage in the alleged sexual misconduct. *Id.*

¶43. Other jurisdictions have found that expert testimony to discuss the term "grooming" was inadmissible on other grounds. *See State v. Vidrine*, 9 So. 3d 1095, 1111 (La. Ct. App. 2009) (finding that expert testimony on grooming was inadmissible and more prejudicial than probative); *People v. Diaz*, 85 A.D.3d 1047, 1051 (N.Y. App. Div. 2011) (finding that the trial court erroneously concluded that testimony regarding "grooming" of children by sex offenders was admissible and was more prejudicial than probative).

16

¶44. The prosecutor used the term "groom" in his closing arguments to describe Sara's testimony, and how Dandass began his sexual encounters with her. The prosecutor inferred that Dandass groomed Sara based on Sara's testimony regarding the instructions Dandass gave her to perform oral sex on him, and her description of the gradual progression of sexual contact. In context of the argument, the use of the term "groom" is similar to "coached" or "primed" as a descriptive term to illustrate Dandass's sexual abuse of Sara, beginning when she was around eleven years old and could barely speak English.

¶45. The prosecutor is entitled to argue reasonable inferences from the evidence at trial. In the context of the witness testimony and the prosecutor's closing arguments, we do not find that a layperson on the jury could not understand whether Dandass's behavior proved sexual intent. Moreover, we do not find that expert testimony was required to aid the jury in understanding the term "groomed" as a description of behavior that occurred over a course of years. Accordingly, we find no error.

### III. Whether the State's rebuttal was improper.

¶46. Dandass asserts that the court committed reversible error in allowing the State to introduce improper rebuttal evidence that was not a part of the State's case-in-chief. "A trial court's decision to allow substantive evidence in rebuttal is reviewed for abuse of discretion." *Gilmore v. State,* 119 So. 3d 278, 292 (¶39) (Miss. 2013) (citing *Mills v. State*, 813 So. 2d 688, 691 (¶11) (Miss. 2002)).

¶47. The general rule in Mississippi is that "the party who has the burden of proof, and the duty to open the case, must in his opening, and before he rests in his proof, introduce all the

17

substantive evidence upon which he relies to establish his demand, and the extent of that demand." *Id.* (citing *Roney v. State*, 167 Miss. 827, 150 So. 774, 775 (1933)). In *Myers v. State*, 353 So. 2d 1364, 1369 (Miss. 1978), the supreme court stated that admission of substantive evidence during rebuttal "does not constitute reversible error, unless it is shown that no opportunity is afforded the defendant to reply by surrebuttal testimony."

¶48. The rebuttal testimony that Dandass assigns error to was that of Vickie Roberts. Dandass was apprised of the allegations of sexual abuse against him shortly after midnight on October 28, 2012. Dandass testified that after he learned of the allegations, he could not sleep and went into his home office to do technical work on his computer for his job. Roberts performed a forensic examination of Dandass's home-office computer and found that he had deleted fifty folders from his computer on October 28, around 2:16 a.m., and those deleted files were unretrievable.

¶49. Dandass's counsel objected to the rebuttal testimony. The trial court ruled that the testimony was provided to rebut Dandass's assertion that he used his home-office computer for technical purposes in the early morning of October 28, hours after Dandass was apprised of Sara's allegations. Roberts testified that Dandass not only deleted fifty folders from his computer, but he also made those files unretrievable. She also testified that a normal user could not bypass the "trash can." Her testimony attacked the assertion that Dandass, a computer-science professor, was merely using his computer for technical purposes.

¶50. Roberts also testified that on October 28, Dandass ran a "defrag" on his computer, which had the effect of writing over any remnants of the deleted files. As a result, she could

18

not retrieve the deleted files. Since Dandass testified that he used the computer on the morning of October 28 to perform technical work and Sara alleged that he had provocative pictures and videos of her on his computer, the State introduced Roberts's testimony in rebuttal to refute Dandass's arguments. Since the rebuttal testimony was introduced to rebut Dandass's contention that he was merely performing technical work on his computer shortly after he learned of the allegations against him and he was afforded the opportunity to cross-examine Roberts, we find that the trial court did not abuse its discretion.

**IV.     Whether the verdict was against the overwhelming weight of the evidence.**

¶51.    Dandass argues that his judgment and sentence should be reversed, because the verdict contradicts the overwhelming weight of the evidence. Dandass contends that Sara was neither reliable nor credible and that no reasonable jury should have believed her. We do not agree.

¶52.    "In reviewing a challenge to the sufficiency of the evidence, [this Court] determines whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Wales v. State*, 73 So. 3d 1113, 1120-21 (¶20) (Miss. 2011) (citing *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). The evidence is sufficient if it "is of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense." *Id.* (quotation marks omitted). The Court will reverse and render "if the facts and inferences, properly considered, 'point in favor of the defendant on any

19

element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty.'" *Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶53.   When the weight of the evidence is challenged, this Court "will reverse only when the verdict [is] so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Wales,* 73 So. 3d at 1121 (¶23) (citing *Bush*, 895 So. 2d at 844 (¶18)).   In light of the evidence submitted at trial, we find that the verdict was not contrary to the weight of the evidence.   Sara's testimony was detailed, and her statements recounting the incidences of sexual abuse were consistent.   The State's witnesses corroborated her testimony.   It is within the jury's purview to determine the credibility of each witness, and they found Sara's allegations credible.   Therefore, we find that the verdict was not contrary to the weight of the evidence.

**V.      Whether the trial court committed reversible error in excluding a
           defense witness and evidence in support Dandass's case-in-chief**.

¶54.   Dandass asserts that the trial court committed reversible error by excluding testimony from defense witness Greg Bott and excluding a painting by Sara for Dandass's birthday from evidence.   Dandass contends that the testimony and painting were relevant under Rule 401 of the Mississippi Rules of Evidence.   We do not agree.

> *A.      Whether the trial court erred in excluding the testimony
>           of Greg Bott.*

¶55.   "Expert testimony admitted at trial must meet the requirements of Rule 702 of the Mississippi Rules of Evidence." *Corrothers v. State*, 148 So. 3d 278, 294 (¶24) (Miss. 2014).

"Rule 702 requires expert testimony to be both relevant and reliable." *Id.* (quoting *Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 784 (¶36) (Miss. 2011)). The relevance prong requires that the evidence "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* "Evidence not relating to an issue in the case is not relevant and not helpful to the jury." *Id.* "To be relevant, the evidence must fit the case by being sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)) (quotation marks omitted).

¶56. At trial, Dandass sought to introduce Bott's testimony to establish that Sara used the family computer and to impeach Sara's statements that she had never seen pornography before. Dandass's trial counsel sought to impeach Sara's statements to forensic interviewer Beverly Moorehead that she had never seen pornography. Bott's testimony was proffered outside of the jury's presence, and he testified that Sara's user profile on the family computer visited pornographic cites.

¶57. The court inquired if there was any way to determine if Sara was the actual person who used her user profile on the family computer to access the pornographic sites. Bott testified that the administrator could log in to the profiles that he created. The trial judge understood Bott's statements to mean that anyone could have logged in to Sara's profile to visit a pornographic site. The court found Bott's testimony could not establish who really accessed the pornographic sites under Sara's profile since all family members, including Dandass, had access to it. As a result, the trial judge found the expert testimony irrelevant and not legitimate rebuttal evidence.

¶58. At the conclusion of the proffer, the court found that "there would have to be some proof of the fact that Sara did in fact access or had some information about sexually explicit actions." The court further concluded that it would not be proper to admit Bott's testimony, and we agree. Bott's testimony could not reliably establish that Sara accessed her user profile on the family computer to visit pornographic websites, when Bott admitted that there was no reliable way of determining if it was Sara or someone else.

¶59. This Court reviews the trial court's admissibility determination for abuse of discretion. *Anderson v. State*, 62 So. 3d 927, 936 (¶23) (Miss. 2011). "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion." *Denham*, 60 So. 3d at 783 (¶34). We find that the trial judge did not abuse his discretion in excluding Bott's testimony.

### B. Whether the exclusion of the painting was in error.

¶60. Dandass argues that the admission of the painting substantiated his case-in-chief, because the painting would have allowed the jury to decide if Sara's gift to Dandass might be inconsistent with someone who was sexually abused. The standard of review for the admission or exclusion of evidence is abuse of discretion. The trial court's decision will stand unless the reviewing court concludes that the decision was arbitrary and clearly erroneous, amounting to an abuse of discretion. *Williams v. State*, 54 So. 3d 212, 213-214 (¶5) (Miss. 2011).

¶61. The painting did not establish whether Sara's allegations of sexual abuse were

credible or not. "Reversal is required only if the defendant can show that he was prejudiced or harmed by the exclusion of the evidence." *Overton v. State*, 195 So. 3d 715, 719 (¶19) (Miss. 2016) (citation and quotation marks omitted). Finding no prejudice or harm by the exclusion of the painting, we find this issue without merit.

## CONCLUSION

¶62. Finding no error, we affirm Dandass's conviction and sentence.

¶63. **THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS, WITH TWENTY YEARS TO SERVE AND FIVE YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, AND TO PAY A $3,000 FINE AND REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. GRIFFIS, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**