# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00901-COA

**DONALD HAYDEN PHILLIPS**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2017 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LUTHER PUTNAM CRULL JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. Donald Hayden Phillips appeals his convictions for assault, kidnapping, and sexual battery. The issues presented are: (1) whether surrogate reviewer testimony violated Phillips' rights under the Confrontation Clause; (2) whether Phillips' exhibits should have been admitted into evidence; (3) whether the trial court abused its discretion by sentencing Phillips to serve a total of thirty-five years in the State penitentiary, which resulted in a violation of his constitutional rights; (4) whether the trial court erred in denying Phillips' post-trial motions; and (5) whether the prejudicial effect of cumulative errors warranted a new trial. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Before dawn one spring day, Jane Doe[1] was awoken by the sound of someone at her front door. When she went outside, she initially did not see anyone, but as she turned to go back in, she saw Donald Hayden Phillips backed up against her trailer. Once Jane spotted him, Phillips gave her a "crazy look" and forced his way inside.

¶3.     Jane told Phillips to leave and attempted to stop him from advancing further into her home. Phillips responded by stabbing Jane in the neck with a pocketknife. Jane fled to the front door in an attempt to escape, but Phillips stabbed her in the back before she could reach the door. Jane then lost consciousness.

¶4.     After she regained consciousness, Jane made another escape attempt—this time through the back door. Phillips again caught her before she could escape. He threw Jane on the couch, and she lost consciousness for a second time. When Jane awoke, Phillips had either already removed her pants or was in the process of doing so. Phillips then ripped off her underwear and repeatedly attempted to rape her over the next several hours. During this time Phillips used his fingers to digitally penetrate Jane's vagina and anus "aggressively [and] multiple times." He also threatened to kill Jane if she tried to escape again.

¶5.     Several hours into the attack, Jane's sister and her sister's boyfriend arrived at the trailer. Upon their arrival, Phillips forced Jane into the bathroom. While brandishing a knife, Phillips pressed himself against the bathroom door, and threatened to kill Jane if she did not get rid of them. During this time, Jane's neighbor and Jane's ex-boyfriend also arrived at the

---

[1] This Court uses pseudonyms to identify victims of sexual assault.

trailer.  When Jane's ex-boyfriend told her he was leaving she shouted out, "[P]lease, don't go!"  Jane's ex-boyfriend then broke down the bathroom door—simultaneously freeing Jane and trapping Phillips inside.  Jane escaped to her back deck and from there was transported to the hospital.

¶6.     The emergency-room nurse testified that Jane had lost a lot of blood from multiple potentially life-threatening wounds.  Jane was stabbed a total of seventeen times in her neck, hand, back, forearm, and both breasts.  A rape kit was performed, multiple pieces of hair were collected, and swabs were taken from all over Jane's body.

¶7.     Kathryn Rodgers was the analyst who tested the samples collected at the hospital.  The swabs taken of Jane's vagina and anus tested positive for seminal fluid and spermatoza.  DNA testing of the seminal fluid and spermatoza could not exclude Phillips as a potential contributor, and there was a 99.9% chance that the rest of the population could be excluded as a potential contributor.

¶8.     At the time of trial, Rodgers was either on or nearing maternity leave.  Because Rodgers was unavailable to testify at trial, the State filed a motion to substitute technical reviewer testimony. The State intended to call the technical reviewer on the case, George Schiro, to testify in Rodgers' place.  In addition to being the technical reviewer on the case, Schiro was also a DNA analyst and director of the laboratory where the tests were conducted. The trial court found his close involvement was sufficient to give testimony.

¶9.     Phillips was brought to trial in Grenada County on charges of aggravated assault, kidnapping, sexual battery, and rape.  The jury was unable to reach a verdict on the rape

charge but found Phillips was guilty on all remaining charges. For the kidnapping and sexual-battery conviction, he was sentenced to thirty years each, to be served concurrently. For the aggravated-assault conviction, Phillips received twenty years with fifteen suspended and five to serve consecutively to the other charges.

## DISCUSSION

### I. The surrogate reviewer testimony did not violate the Confrontation Clause.

¶10. Phillips argues that his constitutional rights under the Confrontation Clause were violated when surrogate testimony regarding the results of a DNA test was admitted. He argues that the court could have granted another continuance until the technician who had performed the test returned from maternity leave and was available to testify. This Court reviews the admissibility of evidence under an abuse of discretion standard. *Armstead v. State*, 196 So. 3d 913, 916 (¶10) (Miss. 2016). "However, constitutional issues are reviewed de novo." *Id.*

¶11. The United States and Mississippi Constitutions both provide criminal defendants with the right to confront those who testify against them. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. In *Crawford*, the United States Supreme Court held that out-of-court "testimonial statements" made by a witness not present at trial may be admitted if the declarant is unavailable and the defendant has had an opportunity to cross-examine them. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). A statement is testimonial when it is given with the purpose of being used "prosecutorally." *Id*. at 51-52.

¶12. Subsequently the same Court held that forensic laboratory reports are considered

4

"testimonial" documents for Confrontation Clause purposes. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009); *accord Bullcoming v. New Mexico*, 564 U.S. 647, 658-59 (2011). "The Confrontation Clause prohibits the introduction of testimonial documents through 'surrogate testimony' of a witness who had no involvement in the creation of those documents." *Armstead*, 196 So. 3d at 917 (¶15). "Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'" *Bullcoming*, 564 U.S. at 661 (quoting *Melendez-Diaz*, 557 U.S. at 319 n.6).

¶13.   However, "neither *Melendez-Diaz* nor *Bullcoming* stands for the proposition that automatic per se error – much less reversible error – occurs in all cases where the primary analyst who performed the test and prepared the report . . . fails to testify." *Armstead*, 196 So. 3d at 919 (¶17).

¶14.   To determine the admissibility of surrogate testimony, this Court follows a two-part test. *Id.* at 919 (¶16). First, the testifying witness must have intimate knowledge of the particular report sought to be admitted. *Id*. at 919 (¶17). Second, the testifying witness must have been actively involved in producing that report. *Id*.

¶15.   Phillips relies on *Bullcoming* to support his argument that the surrogate testimony was improperly admitted. In that case the state unsuccessfully sought to admit forensic reports into evidence under the business-record exception to hearsay. *Bullcoming*, 564 U.S. at 652. Further, the analyst testifying about the forensic report had neither participated in nor observed the test being conducted and had no involvement in the report's creation. *Id*. at

5

651. The Supreme Court held that the surrogate testimony violated the defendant's rights under the Confrontation Clause. *Id*. at 652.

¶16.    This case is distinguishable from *Bullcoming*. Here, the testifying witness, Schiro, was the director of the laboratory where the test was performed. Schiro actively participated in the report's production and possessed intimate knowledge of the analyses rendered, making his testimony admissible. Schiro helped draft the report, calculated the statistics, and checked the data to make sure it supported the report. Schiro finalized the report and had the final say as to what was approved. Most importantly, Schiro independently evaluated the data and arrived as his own, independent expert opinion based upon a reasonable degree of scientific certainty. The dangers of a defendant being deprived of the ability to confront the evidence arrayed against him are not present under the specific facts of this case.

¶17.    Because Schiro had intimate knowledge of the report and was actively involved in its creation we find that there was no Confrontation Clause violation and this issue is without merit.

## II.    The photos and Facebook post of Jane Doe were not admissible.

¶18.    Phillips asserts that the trial court committed reversible error by excluding five photographs of Jane and one Facebook post.[2]  He argues that admission of the photos and

_____

[2] The photographs posted to Jane's Facebook account—all within a month after the attack—were: (1) of Jane and a female friend near a lake with Jane holding a fish; (2) a photo of her in a hospital bed with a large bear balloon captioned, "My get well bear my sweetness got for me! He knows how to cheer me up! Thank you love!"; (3) a selfie captioned "Love my 'Keepin in Foxy Shirt!' Thank Ya'll so much!"; (4) a status Jane posted that read, "Watched Sam Hunt last night and ate Hooters today!!! Now we are Grenada bound and this weather ain't playin!!"; and (5) a photo of a male singer on a stage. The Defendant also sought to introduce a Facebook post Jane posted on March 27th. Because

post would show that Jane's behavior subsequent to the attack was inconsistent with the behavior of someone who had been stabbed seventeen times, kidnapped, sexually assaulted, and raped. Additionally, Phillips argues that the proposed pieces of evidence were relevant character evidence of Jane's truthfulness.

¶19. Evidence admissibility is reviewed under an abuse of discretion standard. *Dandass v. State*, 233 So. 3d 856, 872 (¶60) (Miss. Ct. App. 2017). "Reversal is required only if the defendant can show that he was prejudiced or harmed by the exclusion of the evidence." *Overton v. State*, 195 So. 3d 715, 719 (¶19) (Miss. 2016) (internal quotation mark omitted). A cornerstone of evidence admissibility is its relevance. Evidence is relevant if it tends to make a fact more or less probable and that fact is consequential in determining the case. M.R.E. 401.

¶20. Phillips argues that the proposed evidence went to Jane's truthfulness and would show that her account of events was less credible. "[A] defendant may offer evidence of the alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." M.R.E. 404(a)(2)(B). However, the photos and post did not establish whether or not Jane's allegations were credible. *See Dandass*, 233 So. 3d 872 (¶61) (holding that painting by victim for defendant's birthday was irrelevant and, thus, inadmissible, in prosecution for sexual battery, despite argument that painting would have allowed the jury to decide if victim's gift to defendant might be inconsistent with someone who was sexually abused). Simply because there were photos of the victim in the weeks and months

the post pre-dated the attack by nearly a week, it was properly excluded.

7

subsequent to the attack where she was shown smiling or enjoying life does not go to whether Phillips attacked her. The evidence was uncontested that she was injured and suffered major loss of blood. The question at trial was if Phillips caused that harm. If the posts had cast doubt as to the cause of the injuries, they could have been properly admitted. The trial court excluded them as irrelevant—even the one of Jane in the hospital, which attested to the severity of her injuries. Because the proposed evidence was not relevant, it was properly excluded by the trial court.

¶21. Phillips also cites a number of "inconsistencies" within Jane's testimony, but he fails to show how these alleged inconsistencies would be resolved by admission of the photos and Facebook post. Further, these alleged inconsistencies lack any relation to the proposed evidence.

¶22. Finding the exclusion of the photos and Facebook post were not an abuse of discretion, we affirm the trial court's ruling.

### III. The sentence of thirty-five years without eligibility for parole was not cruel and unusual punishment.

¶23. For his third assignment of error, Phillips argues that his sentence constituted cruel and unusual punishment.[3] Statutorily provided maximum and minimum sentences are not

_____

[3] Within that argument, Phillips briefly addresses the following issues: (1) the length of his sentence amounted to cruel and unusual punishment; (2) the trial court displayed bias against Phillips; (3) Phillips' counsel was not provided adequate time after the jury verdict to prepare for sentencing; (4) issues during voir dire; and (5) the trial court erred by refusing to admit the Facebook post and pictures into evidence.

While Phillips claims in two pages of his brief that the result constitutes error, he does not cite to any authority for these propositions. Failure to support allegations of error with argument or authority will result in waiver. M.R.A.P. 28(a)(7) ("The argument shall contain the reasons for [appellant's] contentions, with citations to the authorities, statutes, and parts

an abuse of discretion. *Nicholas v. State*, 826 So. 2d 1288, 1292 (¶18) (Miss. 2002). Phillips was convicted of sexual battery which carried a sentence of imprisonment "for a period of not more than thirty (30) years . . . ." Miss. Code Ann. § 97-3-101(1) (Rev. 2014). He was also convicted of kidnapping which carried a punishment of life imprisonment "if the punishment is so fixed by the jury in its verdict." Miss. Code Ann. § 97-3-53 (Rev. 2014). If the jury cannot agree on life imprisonment, "the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections." *Id*. His third conviction was for aggravated assault. This charge carried with it a punishment of "imprisonment in the county jail for not more than one (1) year or in the Penitentiary for not more than (20) years." Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2014),

¶24. For the sexual battery conviction, Phillips was sentenced to thirty years. The jury was unable to fix a penalty for the kidnapping conviction, so the court sentenced him to thirty years to be served concurrently with the sexual battery sentence. For his aggravated-assault conviction, he received twenty years with fifteen suspended and five to serve consecutively to his other sentences. These sentences within the statutory limits and are therefore presumptively valid, so the sentences and not cruel and unusual punishment.

IV. **The trial court did not commit reversible error when it denied Phillips' post-trial motions.**

¶25. After he was sentenced, Phillips filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The motion was denied. Phillips now

of the record relied on.").

Even though these issues were not explicitly addressed in this opinion because they are barred, they have been fully considered and analyzed.

challenges that denial by attacking "the legal sufficiency of the overall evidence at trial."

> *A.*      *The motion for a judgment notwithstanding the verdict was properly denied.*

¶26. This Court reviews the denial of a motion for a judgment notwithstanding the verdict (JNOV) to determine whether the evidence sufficiently supported the conviction. A conviction is sufficiently supported when it can be established, beyond a reasonable doubt, that every element of the offense was present. *Taggart v. State*, 957 So. 2d 981, 985-86 (¶8) (Miss. 2007). The evidence is viewed in the light most favorable to the verdict with all favorable inferences given to the prosecution. *Id*. at 986 (¶8). Reversal is only appropriate when "with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id*.

¶27. Phillips challenges the sufficiency of the evidence for his convictions of aggravated assault, kidnapping, and sexual battery. A person is guilty of aggravated assault if the person "attempts to cause or purposely or knowingly cases bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss. Code Ann. § 97-3-7(2)(a)(ii) (Rev. 2014). A person is guilty of kidnapping if they (without lawful authority) "forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will." Miss. Code Ann. § 97-3-53 (Rev. 2014). "A person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a]nother person without his or her consent." Miss. Code Ann. § 97-3-95(1)(a) (Rev. 2014).

10

¶28.    In reviewing the evidence in the light most favorable to the prosecution, we note certain facts: Phillips stabbed Jane seventeen times with a knife; Jane tried to escape two different times; the first time Jane attempted to escape Phillips stabbed her in the back to the point where she lost consciousness; on her second escape attempt, Phillips grabbed her, threw her onto the couch and threatened to kill her if she tried to escape again; by constantly exhibiting the knife, Phillips forced Jane into the bathroom, confined her there against her will, and again threatened to kill her if she tried to escape; Phillips digitally penetrated Jane's vagina and anus multiple times without her consent; and Phillips repeatedly tried to rape Jane over the course of several hours.  Based on the record in this case and the applicable law, we find that the trial court committed no error in denying Phillips' motion for a JNOV.

*B.      The motion for a new trial was properly denied.*

¶29.    "A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict.  A motion for a new trial simply challenges the weight of the evidence." *Id*. at 987 (¶11) (citation omitted).  This Court will only reverse the trial court's denial if the court abused its discretion.  *Id*.  For the reasons discussed above we find that the trial court committed no error by denying Phillip's motion for a new trial.

## V.      There was no prejudicial effect of cumulative errors of the trial court warranting a new trial.

¶30.    For his final issue, Phillips contends that the cumulative errors of the trial court had a prejudicial effect that warrant relief when taken together.  "Under the cumulative-error doctrine, individual errors may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross*

11

*v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2017).  "However, where there is no error in part, there can be no reversible error to the whole."  *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007).  Finding no merit to the other issues, there can be no cumulative error.

## CONCLUSION

¶31.    For the reasons stated above, we affirm Phillips' convictions and sentences for aggravated assault, kidnapping, and sexual battery.

¶32.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**